## Van Pelt v. IOLAB Corp.
*[Cite as 2 AOA 333]*

*Case No. 88CA158*
*Mahoning County, (7th)*
*Decided March 7, 1990*

R.C. 2305.10
R.C. 2305.11
Civ. R. 60(B)

*For Plaintiffs-Appellants, William C. H. Ramage, Esq.*

*Cross-Appellees: Richard D. Goldberg, Esq., 21 S. Phelps Street, Youngstown, Ohio 44503.*

*For Defendant-Appellee, Victoria L. Vance, Esq., 1100 Huntington Building, Cleveland, Ohio 44115.*

DONOFRIO, J.

This is an appeal from the Court of Common Pleas of Mahoning County, Ohio, from the granting of a summary judgment in favor of defendant-appellee, IOLAB Corporation. Plaintiff-appellant, Ruth Van Pelt, appeals.

On November 15, 1982, appellant had surgery for cataracts in her right eye. The surgery was performed by Dr. Albert B. Cinelli, who implanted an intraocular lens manufactured by appellee. Dr. Cinelli implanted a prosthetic device known as an IOL to replace the diseased human lens. Appellant suffered discomfort to her eye after surgery. Appellant discussed this discomfort with Dr. Cinelli, who indicated that discomfort was normal after this type of surgery.

The discomfort and continuing vision problems prompted appellant to seek a second opinion. On August 11, 1983, appellant was examined by Dr. Craig W. George, another eye surgeon. Dr. George recommended that the IOL be removed because it was the wrong size. Appellant sought a third opinion from Dr. Harry Zink, another eye surgeon, who confirmed Dr. George's diagnosis. Dr. Zink indicated that the implant was the wrong size. A second surgery was performed on appellant by Dr. George, who removed the old implant. A second implant was inserted in the eye that was the correct size. Almost immediately, appellant's discomfort was relieved. Dr. Zink informed appellant that since the implant was too small, its constant movement caused a condition known as chronic cystoid macular edema.

In 1985, appellant commenced a suit against Dr. Cinelli. According to appellant, it was not until January 1986, that Dr. Cinelli stated to appellant that her problems were not caused by the use of an improper lens size, but rather by the design of the lens itself. According to appellant, this information was garnered from a deposition of Dr. Cinelli. Despite the doctor's failure to inform appellant of the likelihood that a defect in the implant caused the discomfort until the deposition in January 1986, the trial court relied on the fact that counsel for Dr. Cinelli forwarded a copy of a mailgram issued by appellee Iolab Corporation. This mailgram was forwarded to counsel for appellant in October of 1984. The trial court determined that it was the receipt of this mailgram that commenced the running of the two-year time limit as provided in R.C. 2305.10. The mailgram stated that the IOL model will no longer be studied and that it could no longer be ordered. The mailgram also stated that this type of lens has indicated a higher incidence of cystoid macular edema than initially anticipated and more than other lenses. Appellant argues that although Dr. Cinelli received the mailgram on August 3, 1983, it wasn't until sometime later that a larger body of information could be reviewed to establish that it was the design and not the size of the lens that created appellant's injury. Within a year after Dr. Cinelli's deposition, appellant commenced a suit against IOLAB Corporation, appellee herein.

Appellant sets forth one assignment of error, as follows:

"The trial court committed error prejudicial to the plaintiff-appellant by sustaining defendant-appellee's motion for summary judgment and entering summary judgment against plaintiff-appellant."

Both parties agree that R.C. 2305.10 is the appropriate statute with the two-year time limit provided therein for filing appellant's claim. Both parties argues the case of *Hershberger* v. *Akron City Hosp.* (1987), 34 Ohio St. 3d 1. However, appellant and appellee interpret the facts differently as to when the accrual date

began that started the running of the statute of limitation, appellee, arguing that when appellant's counsel received the mailgram which was issued by the appellee, that was sufficient to put appellant on notice. Appellee argues that notice to an attorney is to be imputed to his client. *American Export and Inland Coal Corp. v. Matthew Addy Co.* (1925), 112 Ohio St. 186; 6 Ohio Jurisprudence 3d 666, Attorneys at Law, Section 135. Appellee contends that appellant did not need to rely on Dr. Cinelli's deposition of January 1986. At the very least, the mailgram triggered her duty to investigate.

The trial court applied R.C. 2305.10 and looked to the Ohio Supreme Court's opinion in *Hershberger, supra,* for guidance in determining when appellant's cause of action accrued. Paragraph one of the syllabus in the *Hershberger* case states:

"In a medical malpractice action, for the purposes of determining the accrual date in applying the statute of limitations under R.C. 2305.11(A), the trial court must look to the facts of the particular case and make the following determinations: when the injured party became aware, or should have become aware, of the extent and seriousness of his condition; whether the injured party was aware, or should have been aware, that such condition was related to a specific professional medical service previously rendered him; and whether such condition would put a reasonable person on notice of need for further inquiry as to the cause of such condition. *Oliver* v. *Kaiser Community Health Found.* (1983), 5 Ohio St. 3d 111, * * *,"

The pertinent information in the mailgram is as follows:

"Overall, the clinical results achieved with the Model 91Z have not been consistent from surgeon to surgeon. Comparison of the published clinical results between premarket approved anterior chamber and posterior chamber lenses reveal that anterior chamber lenses experience a higher incidence of complications and adverse reactions. The IOLAB Model 91Z core study indicates a higher incidence of cystoid macular edema, glaucoma and post-operative inflammation/micro-hyphema than has been seen with premarket approved anterior chamber lenses or with our approved posterior chamber lenses. These core results have been supplemented by personal visits and via telephone and mail contacts.

"Consequently, we believe IOAB's best alternative is to discontinue the clinical study of the Model 91Z and, at present, concentrate our efforts on posterior chamber lenses."

As *Hershberger, supra,* notes, the correct determination of the accrual date requires the examination of the facts. Specifically, the basic thrust of the standard applied by the *Hershberger* court is that an injured party's knowledge of facts, rather than discovery of legal theories is the test. As of October 9, 1984, appellant and her counsel had knowledge of facts concerning the cause of her eye condition and the opportunity to investigate those facts further.

As of October 9, 1984, appellant had a history of eye pain and discomfort that lasted from the time the Model 91Z lens was implanted in her right eye by Dr. Cinelli on November 15, 1982, until the 91Z lens was removed by Dr. George on December 1, 1983; two doctors, with whom appellant consulted in the summer of 1983, advised her that the lens was the cause of the complication she was experiencing and to have the 91Z lens removed; at least one of those doctors told her she suffered from cystoid macular edema; and appellant, or at least her counsel, learned that IOLAB had discontinued the 91Z lens in part because of a higher incidence of cystoid macular edema.

The pertinent part of the trial court's judgment entry states as follows:

"The evidence further reveals that Plaintiff sued Dr. Cinelli for medical malpractice. As a result of that lawsuit, Cinelli's counsel on October 9, 1984, sent Plaintiff's counsel a mailgram issued by Defendant notifying ophthalmologists that the study of the 91Z lens would be discontinued due to poor results.

"Since Plaintiff concedes that R.C. Sec. 2305.10 governs this action, the issue before the Court is whether Plaintiff, Ruth Van Pelt's claim is barred by the two-year statute of limitations under the discovery rule.

"* * *

"After having reviewed the facts of this case, this Court finds as a matter of law that the claim of the Plaintiff, Ruth Van Pelt, accrued on October 9, 1984 when Plaintiff's attorney was informed that the lens would be discontinued."

The record supports the trial court's determination in its judgment entry, and, for the foregoing reasons, we overrule appellant's assignment of error and accordingly affirm the judgment of the trial court.

Defendant-appellee, IOLAB Corporation, has filed a cross-appeal with one assignment of error as follows:

"The Trial Court erred, as a matter of law, in granting Appellant's Rule 60(B) Motion which was devoid of any legal argument, evidentiary materials, testimonial support, or verification of any kind, especially where, as here, the Rule 60(B) Motion was being impermissible used by Appellant as a substitute for appeal."

Initially, the trial court entered a summary judgment against appellant Van Pelt on February 3, 1988. The trial court accepted appellant's claim that she did not receive notification of the first summary judgment. On August 19, 1988, the trial court granted appellant's Rule 60(B) motion, vacated its February 3, 1988 order, then re-entered the summary judgment for IOLAB effective August 19, 1988.

The common pleas court of Mahoning County, Ohio, has rules of court promulgated, one of which states that the parties in a lawsuit shall be notified as to a judgment rendered by the court. The failure of notification of the judgment entry by the trial court was a violation of its own rules; and, as we have previously held, this is prejudicial to the appellant. We find no error in the vacation of the judgment entry for failure to give notice, and we therefore overrule defendant-appellee, cross-appellant's assignment of error; and, as stated in the foregoing, we accordingly affirm the judgment of the trial court.

*Judgment affirmed.*

O'NEILL, P. J., Concurs.
COX, J., Dissents; see Dissenting Opinion.

COX, J., Dissenting:

I would respectfully dissent form the majority opinion in this matter. Under the standards and tests set up by the *Hershberger* case I believe that the appellant actually learned of the defective nature of the lens in January of 1986 and it was from that time that the statute would begin to run. Prior to that, she was told by two separate physicians that the cause of her problem was the improper size of the lens. This is further substantiated by the fact that she submitted to a surgical procedure in which a proper size lens was installed and a lot of her problems disappeared. I do not believe that a reasonable person would read a mailgram sent out to the general community would outweigh testimony of two experts, and bearing in mind here that the test is a reasonable person, I fell that the plaintiff-appellant had every right to rely on her expert testimony and the statute would not begin to run against her.