Day, J.
 

 The two points upon which this controversy turns are, first, whether or not. there was any evidence entitling the plaintiff in error to have its ease submitted to the jury; and, second, whether the knowledge of Nelson B. Cramer, attorney for the defendant in error, is to be imputed to the defendant in error and it thus be chargeable therewith.
 

 As to the first point: Is there any evidence, or a reasonable inference which can be drawn from all the evidence submitted in the record, tending to show that the Matthew Addy Company knew that it was getting Old Colony Smokeless Coal Company money? We have examined the record and fail to find such evidence. The circumstance, that the $7,500 check was deposited by the Matthew Addy Company in the Citizens’ National Bank of Cincinnati on November 11, two days after Kresge had deposited $15,000 to his own account in the same bank, is not such that a reasonable inference can be drawn therefrom that the Matthew Addy Company was a party to the alleged manipulations of the Old Colony Smokeless Coal Company’s funds by Kresge and Cramer. This check was received by the Matthew Addy Company from its attorney, Cramer, and, while Cramer may have had knowledge of the condition of the account of Kresge, we cannot charge such knowledge to the Matthew Addy Company unless we make it chargeable with Cramer’s knowledge, a point which is discussed in the next proposition.
 

 
 *194
 
 Failing to find that the record discloses any evidence, or reasonable inference to be drawn therefrom, which tends to show knowledge on the part of the Matthew Addy Company of the fraud complained of, we reach the conclusion that the Matthew Addy Company was innocent of fraud, if such existed.
 

 This brings us to the second proposition: Is the knowledge of Cramer, the attorney for the Matthew Addy Company, to be imputed to it and it thus be chargeable therewith? Of course the general rule is that notice to an agent is notice to his principal, and this doctrine applies to the relation of attorney and client, and an attorney’s notice or knowledge of facts affecting the rights of his client will be considered notice to the client. There are, however, exceptions to this general rule, and among them is that when the attorney engages in a transaction in his own interest, and under circumstances that would lead him not to impart the knowledge thus obtained to his principal, the presumption that the knowledge thus gained should be imputed to his client does not always prevail.
 

 In the case of
 
 Union Square Bank
 
 v.
 
 Hellerson,
 
 decided by the Supreme Court of New York, 90 Hun, 262, 35 N. Y. S., 871, the facts were that in an action brought by the bank upon a promissory note the defendant Charles Hellerson interposed a defense to the effect that he indorsed the note for the accommodation of the maker, the defendant Hammersen, and solely for the purpose of having it deposited with Fromme Eros., lawyers; that it was expressly agreed that the note should never be used as a legal obligation of
 
 *195
 
 Hellerson, and that the bank, Fromme Bros., the attorneys, and one Manning, the bank’s assignor, each had notice of such facts; and that the transfer of the note by Manning to the bank was without valuable consideration, and with notice of its diversion from the purpose for which it was indorsed by Hellerson.
 

 Upon the trial of the action it appeared that Fromme Bros, were prosecuting a claim of the bank against John B. Manning, and that at the same time Hammersen was purchasing a brewery of Manning, in which latter transaction Fromme Bros, were acting as attorneys for Hammersen. The note was transferred before maturity by Hammersen to Manning to pay for the brewery, and by Manning to the bank, which thereupon surrendered certain shares of stock which it held as collateral for its claim. Hammersen testified that he told Mr. Fromme that Hellerson was an accommodation indorser, but his testimony did not show that he told Mr. Fromme that the note was not to be used:
 

 “Held, that, as in the transaction relative to the brewery, Fromme [the attorney] was not acting for the plaintiff [bank], but for Hammer-sen, whatever knowledge Fromme acquired in that transaction from Hammersen as to the nature of Hellerson’s indorsement could not be imputed to the plaintiff [the bank]; and that the plaintiff was entitled to recover.”
 

 The above case is not dissimilar in fact and principle from the case at bar, for as the court points out in its opinion, Fromme, the attorney, in the transaction relative to the securing of
 
 *196
 
 the note, was not acting for the bank, but in the interest of Hammersen, even though the bank ultimately got the proceeds of the note. In the opinion at page 215 (35 N. Y. S., 873) the court says:
 

 “It is clear that in this part of the transaction Fromm e was acting, not as the attorney for the bank, but for Hammersen. He was attending to Hammersen’s business, and not that of the bank, .and whatever knowledge he had in regard to the origin of the note could not be imputed to the bank, because he was not acting for the bank. He did not receive the notes upon the part of the bank, but, on the contrary, received them for the purposes of the transaction with Manning, handed them over to Manning, and Manning took them to the bank which received them without any notice of this remarkable agreement, that these indorsements were made simply for .child’s play.
 

 “We think that, under these circumstances, there was no foundation for the claim that Fromme’s knowledge, if he had any, as to this remarkable contract in regard to these indorsements, was to be imputed to the bank.”
 

 In the case of
 
 Melms
 
 v.
 
 Pabst Brewing Co.,
 
 93 Wis., 153, 66 N. W., 518, 57 Am. St. Rep., 899, the facts were that executors of an estate, acting through an attorney, indirectly sold the property in question to one of their number, which was in direct violation of a statute which prohibited such procedure, and was also fraudulent as to creditors of the decedent. The attorney who handled the deal, and who knew of the infirmity of the title
 
 *197
 
 passed by such sale made in violation of tbe statute, also represented the purchaser of the property after the executors had sold the property indirectly to one of their number. By reason of the statute, the title takén by the Pabst Brewing Company was a voidable one, but could be avoided by the latter purchaser only if it had, or was charged with, knowledge of the infirmity. The argument was advanced that inasmuch as its attorney had notice of the infirmity of the title the property was taken with knowledge or notice of that fact, and undoubtedly the attorney did have notice or knowledge, as the sale to the defendant was made five months after the illegal sale, and what he- knew five months before he undoubtedly knew five months later. However, the court in that case held that the defendant was not charged with the notice that its attorney had, and although the court recognized the general rule that a client is bound by notice that its attorney has, it decided the case as an exception to the general rule.
 

 At page 169 of the opinion (66 N. W., 523), the court said:
 

 “The whole doctrine of imputed notice to the client or principal rests upon the ground that the attorney or agent has knowledge of something,, material to the particular transaction, which it is his duty to communicate to his principal.
 
 Wyllie
 
 v.
 
 Pollen,
 
 3 De Gex, J. & S., 601. And notice of it will not be imputed to the client where it would be a breach of professional confidence to make the communication; and where the interest in, or the relation of the attorney to, the previous transaction is such as would be sufficient to induce
 
 *198
 
 him to withhold the information, the presumption of its. communication is rebutted. The client will not be charged with notice of a fraud or wrong to which his attorney was a party while enployed by another and which it is quite certain he would conceal.
 
 Kettlewell
 
 v.
 
 Watson,
 
 21 Ch. Div., 707.”
 

 See, also, 4 A. L. R., 1618;
 
 Benedict, Ex’r.,
 
 v.
 
 Arnoux,
 
 154 N. Y., 715, 49 N. E., 326;
 
 Olyphant
 
 v.
 
 Phyfe,
 
 48 App. Div., 1, 62 N. Y. S., 688.
 

 A good statement of the rule is found in
 
 Allen
 
 v.
 
 South Boston Rd. Co.,
 
 150 Mass., 200, at page 206 (22 N. E., 919, 5 L. R. A., 716, 15 Am. St. Rep., 185):
 

 “The general rule is, that notice to an agent, while acting for his principal, of facts affecting the character of the transaction, is constructive notice to the principal.
 
 Suit
 
 v.
 
 Woodhall,
 
 113 Mass., 391;
 
 National Security Bank
 
 v.
 
 Cushman,
 
 121 Mass., 490;
 
 Sartwell
 
 v.
 
 North,
 
 144 Mass., 188;
 
 The Distilled Spirits,
 
 11 Wall., 356. There is an exception to this rule when the agent is engaged in committing an independent fraudulent act on his own account, and the facts to be imputed relate to this fraudulent act. It is sometimes said that it cannot be presumed that an agent will communicate to his principal acts of fraud which he has committed on his own account in transacting the business of his principal, and that the doctrine of imputed knowledge rests upon a presumption that an agent will communicate to his principal whatever he knows concerning the business he is engaged in transacting as agent. It may be doubted whether the rule and the exception rest on any such reasons. It has been suggested that
 
 *199
 
 the true reason for the exception is that an independent fraud committed by an agent on his own account is beyond the scope of his employment, and therefore knowledge of it, as matter of law, cannot be imputed to the principal, and the principal cannot be held responsible for it. On this view, such a fraud bears some analogy to a tort willfully committed by a servant for his own purposes, and not as a means of performing the business intrusted to him by his master. Whatever the reason may be, the exception is well established.
 
 Kennedy
 
 v.
 
 Green,
 
 3 Myl. & K., 699;
 
 Espin
 
 v.
 
 Pemberton,
 
 3 De G. & J., 547;
 
 Rolland
 
 v.
 
 Hart,
 
 L. R., 6 Ch., 678;
 
 In re European Bank,
 
 L. R., 5 Ch., 358;
 
 Cave
 
 v.
 
 Cave,
 
 15 Ch. D., 639;
 
 Kettlewell
 
 v.
 
 Watson,
 
 21 Ch. D., 685, 707;
 
 Innerarity
 
 v.
 
 Merchants’ National Bank,
 
 139 Mass., 332;
 
 Dillaway
 
 v.
 
 Butler,
 
 135 Mass., 479;
 
 Atlantic Cotton Mills
 
 v.
 
 Indian Orchard Mills,
 
 147 Mass., 268;
 
 Howe
 
 v.
 
 Newmarch,
 
 12 Allen, 49.”
 

 Now, the scope of the employment with which Cramer was intrusted by the Matthew Addy Company was the collection of its claim against Kresge. He had pursued that employment with considerable success, and then, upon Kresge’s solicitation, sought to make a personal profit entirely in his own self-interest by entering into the agreement with Kresge with reference to the Old Colony Smokeless Coal Company’s assets. This plan by which Cramer was to profit to the sum of $2,000, at least, and as a result of which Kresge was to secure money for himself, with a part of which he was to pay not only the Matthew Addy Company, but his own personal claims and pay rolls
 
 *200
 
 of
 
 his
 
 subsidiary companies, was surely no part of the employment of Cramer by the Matthew Addy Company. The record does not disclose any authority for the $7,000 purchase of any of the Old Colony Smokeless Coal Company’s assets. The knowledge which Cramer obtained of the affairs of Kresge and the Old Colony Smokeless Coal Company was obtained long after the employment of Cramer by the Matthew Addy Company, and this knowledge was used by Cramer in his own interest, and to further his own personal profit as well as Kresge’s. The fact that he pursued the agency with which he had been intrusted by the Matthew Addy Company within the scope of. that employment, and secured a further collection from Kresge to be applied upon the debt that Kresge owed his principal, the Matthew Addy Company, does not bind the principal in the transaction outside the scope of that employment, the transaction involving a $7,000 investment and a resale of assets thus secured, by which the attorney wás to make a purely personal profit, entirely in his own interest and apart from his client’s authority, with an accompanying depletion of the resources of Kresge, the debtor, to the extent of at least $2,000.
 

 Even conceding all that the plaintiff in error claims as to the transaction of Cramer and Kresge with reference to the. Old Colony 'Smokeless Coal Company’s property, we fail to find that as a matter of law the knowledge so gained by Cramer in the transaction, which was for his own personal profit and self-interest, and outside the scope of his employment by the Matthew Addy Company,
 
 *201
 
 and relating to a transaction purely between himself and Kresge, should be imputed to the Matthew Addy Company. At least we can find nothing in this record that justifies imputing the knowledge of the attorney to the client under the circumstances disclosed, nor are we able to find that the title to money, or the proceeds of a check, which are received by an innocent creditor to be applied upon his debtor’s claim, can be followed into such creditor’s hands unless knowledge, either actual or constructive, of the fraudulent transaction from which such moneys or checks come, can be traced to such creditor.
 
 Atlantic Cotton Mills
 
 v.
 
 Indian Orchard Mills,
 
 147 Mass., 268, 273, 17 N. E., 496, 9 Am. St. Rep., 698;
 
 Nickerson
 
 v.
 
 English,
 
 142 Mass., 267, 268, 8 N. E., 45;
 
 Thacher
 
 v.
 
 Pray,
 
 113 Mass., 291, 18 Am. Rep., 480;
 
 Lime Rock Bank
 
 v.
 
 Plimpton,
 
 17 Pick., (34 Mass.), 159, 28 Am. Dec., 286.
 

 Entertaining these views, we are of opinion that the court of common pleas in directing a verdict and entering judgment in- favor of the Matthew Addy Company was right, and that the judgment of the court of appeals in sustaining the same should be affirmed.
 

 Judgment affirmed.
 

 Matthias, Kinkade and Robinson, JJ., concur. Marshall, C. J., dissents.
 

 Jones, J., not participating.