James R. SNYDER, Plaintiff–Appellant,

v.

AG TRUCKING, INC., et al.,
Defendants–Appellees.

No. 94–3013.

United States Court of Appeals,
Sixth Circuit.

Argued March 16, 1995.

Decided June 14, 1995.

Valita R. Kreiss, Bogin & Patterson, Dayton, OH and Craig T. Matthews (argued and briefed), Yellow Springs, OH, for plaintiff-appellant.

Robert Joseph Brown (argued) and Teresa D. Jones (briefed), Thompson, Hine & Flory, Dayton, OH, for defendants-appellees.

Before: KENNEDY and DAUGHTREY, Circuit Judges; CLELAND, District Judge.*

KENNEDY, Circuit Judge.

Plaintiff, James R. Snyder, brought this action against defendants, Ag Trucking, Inc. ("Ag") and Timothy Boehlke, contending that his employment was terminated in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et. seq.* Plaintiff also made state law claims for breach of contract, promissory estoppel, wrongful discharge, wrongful discharge in violation of a clearly articulated public policy, and defamation. The District Court granted summary judgment on all of the state law claims except breach of contract. At the

---

* The Honorable Robert H. Cleland, United States District Judge for the Eastern District of Michi- gan, sitting by designation.

close of plaintiff's case at trial, the District Court granted judgment as a matter of law to defendants on the claims of breach of contract and willful violation of the ADEA. The jury then returned a verdict in favor of defendants on the remaining ADEA claim. Plaintiff now appeals the District Court's grant of summary judgment and judgment as a matter of law. For the following reasons, the judgment of the District Court is affirmed.

## I.  Facts

Ag Trucking is an Indiana corporation with its principal place of business in Goshen, Indiana. Ag operates trucking terminals in Indiana, Illinois, Iowa and Ohio. Plaintiff was hired in December 1989 as manager for a terminal Ag was opening in Sidney, Ohio. The facility was to serve one of Ag's primary customers, Cargill, Inc. In return, Cargill agreed to dedicate at least 75% of its shipments to Ag.

Plaintiff was hired by Timothy Boehlke ("Boehlke"), Ag's president, and Phil Stump ("Stump"), Ag's senior vice president. Plaintiff was 54 years old at the time. As part of plaintiff's employment application, he signed a disclaimer stating "if hired, employment is for no definite period and is terminable at will." Boehlke, Stump and Richard Coil ("Coil"), Ag's Personnel and Safety Director, however, told plaintiff that he could expect to be at Ag until retirement if he performed his job well. During plaintiff's orientation, Coil gave plaintiff a document entitled, "Wages, Benefits, Working Conditions, Company Rules, Disciplinary Procedures" ("employment manual"). Coil told plaintiff that the employment manual applied to everyone at the company. The manual stated that no employee would be terminated without just cause.

In addition to some managerial duties, plaintiff drove trucks until the new terminal was ready for operation. Ag opened a temporary terminal in Sidney in April 1990. On May 21, 1990, Cargill sent Ag a letter outlining complaints about Ag's servicing of Cargill's Sidney plant. Cargill stated that it considered Ag's performance unacceptable, and that Cargill was losing productivity as a result. Plaintiff began dispatching from the new terminal in October 1990, although it was not yet complete. Prior to October 1990, Ag's Goshen dispatcher was responsible for dispatching trucks to Cargill and other Ohio customers. After plaintiff took over dispatching, drivers would occasionally miss a Cargill pick-up or delivery. Once plaintiff dispatched a truck, however, he had no control over the truck because the Goshen dispatcher could override plaintiff's dispatch. On two occasions, plaintiff admittedly failed to dispatch trucks to Cargill.

On March 15, 1991, Cargill sent another letter about Ag's performance. Cargill stated that the letter was the official thirty-day notification of termination of the parties' contractual relationship. Stump and Al Glaser, the salesperson responsible for the Cargill account, immediately arranged to meet with Cargill officials. In response to the letter, Boehlke met with other management personnel and decided to terminate plaintiff's employment.

When Stump and Glaser met with Cargill on March 19, 1991, they informed Cargill that they were going to terminate plaintiff's employment. Stump and Glaser convinced Cargill not to implement the contract termination. Later that day, Boehlke met with plaintiff for the express purpose of terminating his employment. Plaintiff, however, convinced Boehlke not to fire him, and Boehlke agreed to allow him to continue on a probationary basis. Boehlke then sent plaintiff a letter confirming their conversation.

In May 1991, the tank wash at the Sidney facility was near completion. Ag hired Chris Conley ("Conley") to work under plaintiff to wash trucks. Shortly before the tank wash was completed, plaintiff advised Les Hively ("Hively"), the director of maintenance, that the facility lacked a first aid kit, a fire extinguisher, and other specified safety equipment. Hively initially responded that they did not need the safety equipment. When plaintiff asked again about the first aid kit, Hively said that he would take care of it. Hively, however, told plaintiff that the Sydney facility did not need an eye wash station, a fire extinguisher, or a safety harness and line. During this time period, Boehlke ob-

served plaintiff and Conley cleaning a tank and stated that it was a "pretty rough job for an old, fat, baldheaded man." Plaintiff responded that he could handle the job and Boehlke stated, "you're a tough old fart."

On August 27, 1991, Boehlke came to the Sydney plant and informed plaintiff that he was fired because plaintiff "wasn't managing the place." Within two hours of plaintiff's termination, Boehlke and Hively invited Conley to lunch. During the lunch, Hively stated that Ag was going to hire a "younger man." Shortly thereafter, Ag replaced plaintiff with David Moore, who was 35 years old.

After plaintiff's termination, Boehlke received a letter from plaintiff's attorney. Plaintiff's counsel advised Boehlke that he had investigated plaintiff's termination, and that it appeared that plaintiff was fired because of his age and his insistence on certain safety measures. Counsel further advised Boehlke that he wanted to discuss resolving the case prior to any legal action. On December 21, 1991, Boehlke responded to counsel's letter. Boehlke stated that the reason for plaintiff's termination had nothing to do with plaintiff's age, but was due to poor performance. He explained that since plaintiff's termination, the problems at the terminal had ceased. Boehlke went on to say that "I understand Jim is working for cash while he rides out his unemployment benefits; I sincerely hope he is reporting his cash compensation."

## II. Summary Judgment on the Promissory Estoppel and Defamation Claims

### A. *Standard of Review*

■ We review a grant of summary judgment de novo. *See Kraus v. Sobel Corrugated Containers, Inc.,* 915 F.2d 227, 229 (6th Cir.1990). On a motion for summary judgment, the movant has the burden of showing that there is no genuine issue of material fact, and the evidence must be read in the light most favorable to the party opposing summary judgment. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Summary judgment is proper "if the pleadings, deposi-

tions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986).

### B. *Promissory Estoppel*

In *Mers v. Dispatch Printing Company,* 19 Ohio St.3d 100, 483 N.E.2d 150, 155 (1985), the Supreme Court of Ohio held that the doctrine of promissory estoppel could modify employment at will relationships if three conditions were met. First, the employer must make a promise that the employer should reasonably expect to induce action or forbearance on the part of the employee. *Id.* Second, the promise must have actually induced action or forbearance that was detrimental to the employee. *Id.* Third, enforcement of the promise must be necessary to avoid injustice. *Id.*

The District Court held that even if plaintiff could demonstrate the other elements of promissory estoppel, he could not demonstrate detrimental reliance and, therefore, summary judgment was appropriate. The District Court noted that plaintiff did not discontinue an employment search or decline an offer for a better job based upon defendants' promises. Rather, plaintiff merely declined to look for alternative employment.

■ Plaintiff argues that defendants' assurances of job security "lulled [him] into inaction and that inaction is just as much reliance to his detriment as if he had started a job search and discontinued it." Plaintiff also argues that he detrimentally relied upon defendants' promises of job security by leaving his former position. Plaintiff is correct that giving up a job and not seeking other employment opportunities may constitute detrimental reliance in certain circumstances. *See, e.g., Rogers v. Targot Telemarketing Serv.,* 70 Ohio App.3d 689, 591 N.E.2d 1332 (1990); *Tersigni v. General Tire, Inc.,* 91

Ohio App.3d 757, 633 N.E.2d 1140, 1143 (1993).

■ We do not need to reach this issue, however, because we conclude that defendants' alleged promise was not sufficiently specific to induce reliance. Plaintiff testified at his deposition that Boehlke, the president, and Stump, the vice president, told him that "there would be a place there [at the new terminal] for me. That I would be given every opportunity to go and grow with the company. I was told about the retirement plan and could expect to be there until retirement." Additionally, plaintiff testified that Coil, the director of personnel, told him that "AG Trucking was a fair company; all employees are treated fairly." These statements are general comments about career growth and company policy; they are not sufficiently specific to change plaintiff's at will status.[1] "[S]tanding alone, praise with respect to job performance and discussion of future career development will not modify the employment-at-will relationship." *Helmick v. Cincinnati Word Processing*, 45 Ohio St.3d 131, 543 N.E.2d 1212, 1216 (1989).

■ Plaintiff also points to the employment manual, which stated that employees would be fired for cause only. As discussed below, however, the manual does not support plaintiff's claim. The employment manual did not apply to managerial employees such as plaintiff. Additionally, plaintiff's application for employment stated that he understood that company policies would not guarantee him a right to continued employment. Accordingly, we affirm the District Court's grant of summary judgment.

## C. Defamation

■ Plaintiff argues that the District Court improperly granted summary judgment on his defamation claims. Defamation is defined as a false publication "causing injury to a person's reputation, or exposing him to public hatred, contempt, ridicule, shame or disgrace, or affecting him adversely in his trade or business." *Matalka v. Lagemann*, 21 Ohio App.3d 134, 486 N.E.2d 1220, 1222 (1985). Defamation per se includes "that which reflects perniciously on a person's character or injures one in his trade, profession or occupation." *Tohline v. Central Trust Co.*, 48 Ohio App.3d 280, 549 N.E.2d 1223, 1228 (1988). To establish a prima facie case, plaintiff must show "a publication to a third person for which defendant is responsible, the recipient's understanding of the defamatory meaning, and its actionable character." *Hahn v. Kotten*, 43 Ohio St.2d 237, 331 N.E.2d 713, 718 (1975).

Because Boehlke's letter was in response to an inquiry by plaintiff's attorney, the District Court held that there was no publication. "[I]f the language complained of was uttered only to the complaining party or to his agent representing him in the matter discussed in the communication, it is not such a publication as will support an action for slander. Particularly is this true where the communication was solicited by the plaintiff or his agent." *Mims v. Metropolitan Life Ins. Co.*, 200 F.2d 800, 802 (5th Cir.1952), *cert. denied*, 345 U.S. 940, 73 S.Ct. 831, 97 L.Ed. 1366 (1953). *See also Jones v. Britt Airways, Inc.*, 622 F.Supp. 389, 392 (N.D.Ill. 1985) ("When a letter is written in response to an attorney's inquiry, however, 'that letter is the equivalent to a publication to plaintiff himself, and therefore is privileged and is not actionable.'") (quoting *Millsaps v. Bankers Life Co.*, 35 Ill.App.3d 735, 342 N.E.2d 329, 335 (1976)).

■ Although the District Court could not find any Ohio cases that addressed this precise issue, the District Court reasoned that Ohio courts would hold that there was no publication based on agency principles. The District Court noted that in *American Export & Inland Coal Corp. v. Matthew Addy Co.*, 112 Ohio St. 186, 147 N.E. 89, 91 (1925), the Supreme Court of Ohio held that notice to an attorney of facts affecting his or her client's rights will be considered notice to the client. *See also Raible v. Raydel*, 162 Ohio St. 25, 120 N.E.2d 425 (1954). We agree that Ohio courts would hold that publication to

---

1. Plaintiff attempts to rely upon his more detailed trial testimony to bolster his promissory estoppel claim. This Court, however, must examine the evidence plaintiff presented to the District Court in opposition to the motion for summary judgment.

plaintiff's attorney is not publication to a third party, at least when the communication pertains to the matter for which the attorney was retained. This conclusion is consistent with the absolute privilege Ohio gives to statements made in a judicial proceeding that are related to the proceeding's purpose. *See Hecht v. Levin*, 66 Ohio St.3d 458, 613 N.E.2d 585, 587 (1993) ("A statement made in a judicial proceeding enjoys an absolute privilege against a defamation action as long as the allegedly defamatory statement is reasonably related to the proceeding in which it appears."). It would not make sense for Boehlke's statements to be absolutely privileged if given in a deposition or interrogatory, but actionable when given voluntarily to plaintiff's attorney before the initiation of litigation.

■ We now must address whether Boehlke's statements pertained to plaintiff's age discrimination claim. We first note that Boehlke's allegedly defamatory statements were written in response to a letter from plaintiff's attorney. In his letter to Boehlke, plaintiff's attorney summarized the results of his investigation into plaintiff's termination, addressed plaintiff's damages, and invited Boehlke to discuss the case. Plaintiff's attorney noted that "[plaintiff] has lost a large amount of salary and has been put in an extremely difficult financial position as a result of the termination." In Boehlke's letter in response, Boehlke discussed the reasons for plaintiff's termination and stated that "I understand [plaintiff] is working for cash while he rides out his unemployment benefits; I sincerely hope he is reporting his cash compensation." Plaintiff contends that Boehlke's letter implied that plaintiff was illegally working while collecting unemployment benefits and not reporting his income. These statements, however, pertained to plaintiff's damages, a subject that was expressly raised in the letter from plaintiff's attorney. We, therefore, find that Boehlke's statements were related to plaintiff's age discrimination claim and did not constitute a publication.

■ Plaintiff argues that defendants waived any claim to privilege by not pleading it. Additionally, plaintiff argues that allega-

tions of criminal conduct constitute defamation per se and destroy any privilege. Plaintiff confuses privilege and publication. Privilege is a defense, which is only relevant if plaintiff establishes a prima facie case. *See Hahn v. Kotten*, 43 Ohio St.2d 237, 331 N.E.2d 713, 718 (1975). *See also Mims*, 200 F.2d at 802 ("But we do not reach the matter of privilege or malice until publication has been established, which here has not been done.").

■ Plaintiff also argues that defendant defamed him in a conversation with his subsequent employer. The District Court granted summary judgment on this claim because plaintiff was unable to identify any defamatory statements. On appeal, plaintiff has not pointed to any evidence in the record to support this claim other than Boehlke's own vague statement that he talked about plaintiff with plaintiff's new employer. Accordingly, we affirm the District Court's grant of summary judgment on the defamation claims.

## III. Judgment as a Matter of Law on the Willful Violation of the ADEA and Breach of Contract Claims

### A. *Standard of Review*

■ We review a judgment as a matter of law de novo. *See Nida v. Plant Protection Ass'n Nat.*, 7 F.3d 522, 525 (6th Cir. 1993). Judgment as a matter of law is proper if "during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." FED.R.CIV.P. 50(a)(1). *See also Nida*, 7 F.3d at 525.

### B. *Willful Violation of the ADEA*

■ Plaintiff argues that the District Court improperly granted defendants' motion for judgment as a matter of law on the issue of willfulness. The ADEA provides for liquidated damages when an employer's violation is willful. *See* 29 U.S.C. § 626(b). A violation of the ADEA is willful if "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *Hazen Paper Co. v.*

*Biggins,* —— U.S. ——, ——, 113 S.Ct. 1701, 1710, 123 L.Ed.2d 338 (1993). *See also Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985).

■■■ Plaintiff contends that he presented evidence from which the jury could reasonably infer that Ag willfully violated the ADEA. We are inclined to agree. The District Court's error, however, was harmless in view of the jury's verdict in favor of defendants on the underlying ADEA claim. The jury found that defendants had not terminated plaintiff because of his age; therefore, the jury could not have found that defendants willfully violated the ADEA if the issue had been submitted to the jury.

## C. Breach of Contract

Plaintiff argues that the District Court improperly granted judgment as a matter of law to defendants on the breach of contract claim. Plaintiff contends that the employment manual, which stated that employees would only be fired for cause, constituted a contract. Additionally, plaintiff relies upon the oral representations made by Coil, Boehlke, and Stump.

The District Court found that any comments that Boehlke made to plaintiff were not sufficiently specific to give rise to a contract, and that Coil, the personnel director, lacked authority to bind the corporation. The District Court also found that plaintiff's discussion with Boehlke addressed retirement benefits and forced retirement, not plaintiff's at will status. Furthermore, the District Court found that the employment manual, taken as a whole, did not apply to management personnel and was given to plaintiff after he had been hired. Finally, the District Court noted that plaintiff acknowledged in his application that his employment was at will.

■■■ We agree with the District Court that the employment manual did not apply to managerial employees such as plaintiff. The manual addresses wages, rules, and disciplinary actions for drivers and mechanics. Plaintiff argues that the manual applies to him based upon one sentence that reads, "The Company will not discharge or suspend any employee without just cause." That sentence, however, is found in a section on disciplinary procedures that clearly applies to drivers and mechanics, not salaried managerial employees. The section addresses disciplinary actions for infractions such as failing to report accidents, driving recklessly, and punching the time card of another employee. Plaintiff may not rely on one sentence while ignoring the rest of the manual. *See Uebelacker v. Cincom Systems, Inc.,* 48 Ohio App.3d 268, 549 N.E.2d 1210, 1218 (1988) ("[Plaintiff] cannot rely on selected passages favorable to his position and ignore those that are unfavorable."). Furthermore, at trial plaintiff conceded that he was given the manual during an orientation for truck drivers.

Additionally, plaintiff's employment application expressly stated that the employment relationship was at will and that company policies did not guarantee a right to continued employment. It is clear from this disclaimer that Ag did not intend the employment manual to alter plaintiff's at will status. "Absent fraud in the inducement, a disclaimer in an employee handbook stating that employment is at will precludes an employment contract other than at will based upon the terms of the employee handbook." *Wing v. Anchor Media, Ltd.,* 59 Ohio St.3d 108, 570 N.E.2d 1095, 1098 (1991).

■■■ Plaintiff also argues that he had an oral contract for "just cause" termination based upon the oral representations of defendants. Plaintiff testified that during his interview, he stated that he was looking for "a company that I could stay with until I retired, and one that had a good, solid background to it." In response, plaintiff testified that Boehlke and Stump told him "as long as I did my job, I could stay there until retirement or beyond." In a separate conversation with Boehlke, plaintiff expressed concern that he would have to retire before his retirement benefits vested. Plaintiff testified that Boehlke responded that "as long as I did my job, that I could work for Ag as long as I wanted to; that there was no forced retirement at 65." We agree with the District Court that both of these conversations were

about Ag's retirement policy, and, in any case, were too vague to alter the at will nature of plaintiff's employment. *Cf. Henkel v. Educational Research Council of America,* 45 Ohio St.2d 249, 344 N.E.2d 118, 121–22 (1976) (" 'Generally speaking, a contract for permanent employment, for life employment, or for other terms purporting permanent employment, where the employee furnishes no consideration additional to the services incident to the employment, amounts to an indefinite general hiring terminable at the will of either party . . . .' ") (quoting *Forrer v. Sears, Roebuck & Co.,* 36 Wis.2d 388, 153 N.W.2d 587, 589 (1967)). Accordingly, we affirm the District Court's grant of judgment as a matter of law.

## IV. Evidentiary Issues

### A. *Standard of Review*

■ We review a district court's evidentiary rulings for abuse of discretion. *See United States v. Williams,* 952 F.2d 1504, 1518 (6th Cir.1991). "A finding of abuse of discretion will be made only where the reviewing court is firmly convinced that a mistake has been made." *Id.*

### B. *Health and Safety Concerns*

■ Plaintiff argues that the District Court improperly excluded evidence regarding plaintiff's concerns over health and safety issues. Plaintiff repeatedly requested safety equipment for the terminal. Plaintiff argues that because older workers are more likely to suffer permanent injuries than younger workers,[2] plaintiff's safety concerns relate to his age discrimination claim. The District Court excluded the evidence, finding that there was no logical relationship between age and safety concerns. Additionally, the District Court found that the evidence would be unfairly prejudicial to defendants. We agree. The District Court granted summary judgment in favor of defendants on plaintiff's claim for wrongful discharge in violation of public policy; that claim alleged that plaintiff was fired because he expressed concerns over the lack of safety equipment. Plaintiff

may not revive that claim via the ADEA. That older workers may be at greater risk for significant injury is insufficient to make plaintiff's concerns relevant to his age discrimination claim. The ADEA was enacted to prohibit discrimination based upon age, not discrimination based upon personal characteristics that may or may not be more prevalent among older workers.

### C. *Ag's Post–Discharge Practices*

■ Plaintiff also argues that the District Court improperly excluded evidence regarding Ag's post-discharge practices. Specifically, plaintiff sought to demonstrate that Ag continued to experience problems with service to Cargill even after plaintiff was terminated. Plaintiff contends that this evidence was relevant to show that defendants' stated reason for discharging plaintiff was pretextual.

Plaintiff attempted to ask two witnesses if the new terminal manager had ever missed a dispatch. In both cases, however, plaintiff failed to lay a proper foundation and the District Court properly sustained defendants' objections. In neither case did plaintiff attempt to lay a proper foundation or make an offer of proof. As a general rule, error may not be predicated on a ruling which excludes evidence unless an offer of proof is made. FED.R.EVID. 103(a). Plaintiff, therefore, has waived any claim of error.

## V. Conclusion

For the foregoing reasons, we **AFFIRM** the judgment of the District Court.

---

2. Dr. John Phelps, an economist, testified for plaintiff that older workers are more likely to experience permanent or fatal injuries if injured.