**Joyce J. HOWELL, Plaintiff,**

v.

**STARK COUNTY COMMUNITY ACTION AGENCY, Defendant.**

**No. 5:98–CV–2511.**

United States District Court, N.D. Ohio, Eastern Division.

Aug. 27, 1999.

Joyce J. Howell, Canton, OH, pro se.

Edward L. Gilbert, Law Offices of Edward L. Gilbert, Akron, OH, for Stark County Community Action Agency, defendants.

## OPINION AND ORDER

GWIN, District Judge.

On June 24, 1999, Defendant Stark County Community Action Agency ("SCAA") filed a motion for summary judgment in this discrimination action. [Doc. 20]. With this motion, the defendant maintains that no genuine issue of material fact exists regarding Plaintiff Joyce Howell's discrimination claims under Title VII of the Civil Rights Act of 1964 (42 U.S.C.

2000e *et seq.*) and 42 U.S.C. § 1981 and § 1983. The defendant also contends that no material factual dispute exists regarding the plaintiff's claims for retaliation under Title VII and for defamation under state law.

Finding no genuine issue of material fact with respect to the plaintiff's claims, the Court grants the defendant's motion for summary judgment.

## I. Facts

Defendant SCAA terminated Plaintiff Howell from its employ in November 1995. The plaintiff asserts that her termination resulted from unlawful racial discrimination. Additionally, the plaintiff contends that her termination was in retaliation for her filing a grievance alleging discriminatory conduct on the part of her supervisor. The plaintiff also alleges that the defendant defamed the plaintiff during the events following her termination.

Through a contract with the federal government, the defendant administers the Head Start program in Stark County, Ohio. The Policy Council of the SCAA approves decisions to hire or terminate employees of the Head Start program. The Head Start program director advises the Policy Council in regard to employee hiring and termination.

In October 1994, the Head Start program director, Bonnie Wheeler, recommended the hire of the plaintiff, an African–American female, to serve as Parent Involvement Coordinator. The Policy Council approved Wheeler's recommendation. The plaintiff subsequently began her employment with the defendant, subject to a probationary period of disputed duration.[1]

As Parent Involvement Coordinator, the plaintiff was required to perform various duties, including:

"implementing and coordinating parent and volunteer activities in Stark County;

---

1. The plaintiff states that she was hired under a 90 day probationary period, which was subsequently increased to a one-year period.

The defendant contends that the plaintiff was hired under a one-year probationary period.

promoting and coordinating community and parent volunteering; establishing a positive rapport with people of all economic levels; and coordinating a monthly newsletter; as well as many other tasks."

(Def.'s Mot. Summ. J. at Ex. 2.)

The parties offer different accounts of the plaintiff's performance as Parent Involvement Coordinator. The plaintiff states that she maintained a "good work record." (Pl.'s Compl. at II.4.B.) The defendant, however, disputes this characterization by offering evidence of the plaintiff's inadequate job performance. *See infra,* Part III.A.1. This evidence includes documentation of co-worker complaints and poor employee evaluations. The plaintiff does not address the defendant's evidentiary showing.[2]

On October 20, 1995, the plaintiff filed a grievance with the defendant's Equal Employment Opportunity ("EEO") officer. In this grievance, the plaintiff alleged that Wheeler discriminated against the plaintiff's staff, all of whom were African-American. Specifically, the plaintiff maintained that Wheeler's repeated criticisms regarding the performance of the plaintiff's staff were racially-motivated. On November 8, 1995, the EEO officer informed the plaintiff that, after a full investigation, he discovered no facts to substantiate the plaintiff's allegation.

Citing a "continuous lack of acceptable work performance," the defendant suspended the plaintiff on November 10, 1995, with final termination pending the Policy Council's approval. On November 14, 1995, the Policy Council approved the plaintiff's termination. The defendant notified the plaintiff of her final termination in a letter dated November 30, 1995.

Following her termination, the plaintiff filed discrimination charges with the United States Equal Employment Opportunity Commission ("EEOC") and the Ohio Civil Rights Commission. The plaintiff alleges that the defendant, apparently during the investigation of these charges, defamed her by informing the Ohio Civil Rights Commission that the plaintiff had been the victim of domestic abuse.

The EEOC investigated the plaintiff's charges, and was unable to conclude that the information obtained established a violation of Title VII. The plaintiff was thus given a right to sue notice.

On November 2, 1998, the plaintiff filed this action *pro se.* The plaintiff sues the defendant under Title VII, claiming that her termination resulted from unlawful discrimination and retaliation. The plaintiff also seeks redress for her alleged discriminatory discharge under 42 U.S.C. § 1981 and § 1983. Additionally, the plaintiff sues the defendant for defamation under state law.

## II. Standard of Review

Rule 56(c) of the Federal Rules of Civil Procedure states the procedure for granting summary judgment:

> [t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

In considering a motion for summary judgment, the court must view the facts and all inferences to be drawn therefrom in the light most favorable to the nonmoving party. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *60 Ivy Street Corp. v. Alexander,* 822 F.2d 1432, 1435 (6th Cir. 1987); *SEC v. Blavin,* 760 F.2d 706, 710 (6th Cir.1985). The moving party has the burden of showing conclusively that no genuine issue of material fact exists. *See 60 Ivy Street Corp.,* 822 F.2d at 1435.

Factual disputes about matters essential to adjudication preclude the Court from

---

**2.** The plaintiff has not responded to the defendant's motion for summary judgment.

granting summary judgment. *See id.* But not every factual dispute between the parties will prevent summary judgment. Rather, the disputed facts must be material. They must be facts that, under the substantive law governing the issue, might affect the outcome of the suit. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The factual dispute must also be genuine. The facts must be such that if they were proven at trial a reasonable jury could return a verdict for the nonmoving party. *See id.* at 248, 106 S.Ct. 2505. The disputed issue does not have to be resolved conclusively in favor of the nonmoving party, but that party is required to present significant probative evidence that makes it necessary to resolve the parties' differing versions of the dispute at trial. *See 60 Ivy Street,* 822 F.2d at 1435 (citing *First Nat'l Bank of Arizona v. Cities Serv. Co.,* 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Thus, the judge's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue a proper jury question. "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *60 Ivy Street,* 822 F.2d at 1436 (quoting *Anderson,* 477 U.S. at 249, 106 S.Ct. 2505). Accordingly, viewing the evidence in the light most favorable to the nonmoving party, the court should determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251, 106 S.Ct. 2505.

The Court now reviews the facts with these standards in mind.

## III. Discussion

### A. Title VII

#### 1. Racial Discrimination

■ Plaintiff Howell alleges that her employment with the defendant was terminated on account of her race, in violation of Title VII. In response, Defendant SCAA states that the plaintiff's poor work performance, rather than her race, led to her discharge.

Under Title VII, it is unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race...." 42 U.S.C. § 2000e–2(a)(1).

In this case, the plaintiff has not offered any direct evidence of discrimination on the part of the defendant. Thus, to prevail on her discrimination claim, the plaintiff must make the showing described in *McDonnell Douglas v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

The *McDonnell Douglas–Burdine* framework consists of three stages. At the first stage, the plaintiff must establish a *prima facie* case of employment discrimination. To make a *prima facie* case, the plaintiff must show she (1) was a member of a protected class; (2) suffered an adverse action; (3) was qualified for the position; and (4) was replaced by a person outside the protected class or was treated differently from a similarly-situated employee outside the plaintiff's class. *See Wine v. Wal–Mart Stores, Inc.,* 173 F.3d 857, 1999 WL 191394, \*1 (6th Cir. Mar.19, 1999); *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 582–83 (6th Cir.1992).

If the plaintiff makes a *prima facie* case, the defendant is presumed to have violated Title VII. To overcome this presumption,

the defendant must set forth evidence showing that the adverse employment action arose from a legitimate, nondiscriminatory reason. *See id.* If the defendant does so, the burden shifts back to the plaintiff to prove pretext, that is, that discrimination was a determinative factor in her termination. *See id.*

Applying this framework to Plaintiff Howell's claim, the Court finds the plaintiff has failed to offer evidence establishing a *prima facie* case of discrimination.

As an African–American employee terminated from her position, the plaintiff satisfies the first two elements of a *prima facie* case. However, because she has not shown that she was "qualified" for her position, the plaintiff has failed to satisfy the third element of a *prima facie* case. To be "qualified" for her position, the plaintiff must demonstrate that "she was meeting her employer's legitimate expectations and was performing to her employer's satisfaction." *Warfield v. Lebanon Correctional Institution,* 181 F.3d 723, 729 (6th Cir.1999).

Here, the plaintiff has not presented any evidence for a jury to reasonably find that she was performing to the satisfaction of her employer. Rather, the plaintiff, in her complaint, offers the conclusory statement that "she maintained a good work record, attendance, punctuality, and worked well with fellow colleagues and parents. And to the best of Plaintiff's knowledge, no parent, co-worker, nor member of the community felt that Plaintiff's work was unsatisfactory." (Pl.'s Compl. at II.4.B.) Again, the plaintiff offers no evidence to support this statement.

In contrast, the defendant offers substantial evidence showing that the plaintiff's work performance was unsatisfactory. First, the defendant offers a memorandum to the plaintiff's supervisor, dated June 14, 1995, from Grace Skaff, the fiscal manager at the SCAA. In this memorandum, Skaff complained of the "substandard work and attitude" of the department under the plaintiff's control. (Def.'s Mot. Summ. J. at Ex. 4.) Skaff further reported that she allotted approximately 200 staff hours to correct the plaintiff's errors in documenting certain departmental figures.

The defendant also offers a memorandum sent to the plaintiff, dated June 24, 1995, from the plaintiff's supervisor. After criticizing the plaintiff for not following the appropriate chain of command in resolving work-related problems, the plaintiff's supervisor states in this memorandum that the plaintiff's "continuous inappropriate behavior and unprofessional decision-making tactics are not acceptable." (Def.'s Mot. Summ. J. at Ex. 5.)

Next, the defendant submits the minutes from a personnel meeting held in September 1995 with the plaintiff, her supervisor, and an SCAA human resource officer. These minutes reveal that the plaintiff continued to perform her duties below par. During the meeting, the plaintiff's supervisor noted various problems with the plaintiff's job performance, and further stated that these problems "have become major issues." (Def.'s Mot. Summ. J. at Ex. 6.)

The defendant then offers the plaintiff's employee evaluation, dated October 16, 1995. This evaluation highlights the unsatisfactory nature of the plaintiff's work performance. In this evaluation, the plaintiff's supervisor, after noting several problems areas with the plaintiff's work, informed the plaintiff that "[w]e cannot continue with [the plaintiff's] job half-done." (Def.'s Mot. Summ. J. at Ex. 8.)

Finally, the defendant submits a letter to the plaintiff's supervisor, dated October 25, 1995, from Denna Wiley, an executive director with a printing company. Wiley complained in the letter of the plaintiff's unprofessional conduct during a meeting to finalize the specifications for an SCAA newsletter. Wiley wrote that she "was deeply offended by Ms. Howell's conduct and choice of words during our meeting." (Def.'s Mot. Summ. J. at Ex. 9.)

848

The evidence offered by the defendant demonstrates that the plaintiff was not "meeting her employer's legitimate expectations," and was thus not qualified for her position. The plaintiff submits no evidence to rebut the defendant's showing.

IV. Finding no genuine issue of material fact with respect to the plaintiff's required showing of a *prima facie* case, the Court grants summary judgment to the defendant on the plaintiff's discrimination claim.

### 1. Retaliation

■ Plaintiff Howell alleges that her employment with the defendant was terminated in retaliation for her filing a grievance alleging race discrimination on the part of her supervisor. In response, Defendant SCAA states that the plaintiff's discharge resulted solely from her poor work performance.

Under Title VII, an employer may not retaliate against an employee "because he has opposed any practice made an unlawful employment practice ... or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" in connection with an unlawful employment practice. 42 U.S.C. § 2000e–3(a).

The same *McDonnell Douglas–Burdine* framework governing Title VII discrimination claims applies to retaliation claims. Thus, to prevail, the plaintiff must first establish a *prima facie* case of retaliation. To establish a *prima facie* case, the plaintiff must show (1) that she engaged in an activity protected by Title VII; (2) that the exercise of her civil rights was known by the defendant; (3) that, thereafter, the plaintiff suffered an adverse employment action; and (4) that there was a causal connection between the protected activity and the adverse employment action. *See Canitia v. Yellow Freight Sys., Inc.*, 903 F.2d 1064, 1066 (6th Cir.1990).

If the plaintiff establishes a *prima facie* case, the defendant is presumed to have retaliated against the plaintiff in violation of Title VII. The defendant can overcome this presumption by offering evidence showing that the adverse employment action was based on a legitimate, nondiscriminatory reason. Once the defendant makes this showing, the burden shifts back to the plaintiff to prove pretext. *See id.*

Applying this framework to the plaintiff's claim, the Court finds that the plaintiff has failed to offer sufficient evidence to establish her retaliation claim.

With respect to the *prima facie* case, the plaintiff satisfies the first three elements of a *prima facie* case of retaliation. First, the plaintiff engaged in activity protected by Title VII when she filed a grievance alleging race discrimination. Second, having filed an internal grievance, the plaintiff's protected activity was known to the defendant. Third, the plaintiff suffered an adverse employment action after engaging in a protected activity when she was suspended and subsequently terminated from her position.

However, whether the plaintiff satisfies the "causal connection" element of a *prima facie* case is less clear. The plaintiff offers no direct evidence showing that her termination resulted from her protected activity. Nevertheless, even "where there is no direct proof of a retaliatory motive, retaliation may be imputed if the timing of the retaliatory act is such as to allow an inference of retaliation to arise." *Brown v. ASD Computing Center*, 519 F.Supp. 1096, 1116 (S.D.Ohio, 1981); *Harrison v. Metro. Gov't*, 80 F.3d 1107, 1118–1119 (6th Cir. 1996) (noting that temporal proximity of the adverse action to the protected activity is relevant in determining a causal connection); *Moon v. Transp. Drivers, Inc.*, 836 F.2d 226, 229 (6th Cir.1987) (stating that, absent compelling evidence that an employer encouraged protected activity, the "proximity in time between protected activity and adverse employment action may give rise to an·inference of a causal connection").

Here, the plaintiff filed her grievance in mid-October 1995.[3] On November 10, 1995, the plaintiff was suspended from her position, and terminated four days later. Thus, the plaintiff suffered an adverse employment action less than one month after she engaged in protected activity.

The Court has found no clear guidance as to the proximity between an adverse action and protected activity necessary to give rise to an inference of a causal connection. In this case, however, the Court need not determine whether an inference of a causal connection is appropriate. This is because, as discussed below, the plaintiff has failed to offer any evidence showing the defendant's legitimate, nondiscriminatory reason for the plaintiff's termination is a mere pretext for discrimination. *See Gagne v. Northwestern Nat'l Ins. Co.*, 881 F.2d 309, 314 (6th Cir.1989) (" '[I]t is clear that merely making out a prima facie case does not automatically save appellant from a summary judgment motion. Indeed, the inference of discrimination created by the prima facie case is dispelled once the employer's reason is stated, until and unless the latter is shown to be pretext.' " (citations omitted)).

The defendant states that it terminated the plaintiff because of her "continuous lack of acceptable work performance...." (Def. Mot. Summ. J. at Ex. 6.) The defendant has thus offered a legitimate, nondiscriminatory reason for the plaintiff's termination. The burden, therefore, shifts to the plaintiff to offer evidence showing that the defendant's explanation is pretextual.

The plaintiff has failed to offer evidence suggesting she was terminated for any reason other than her poor work performance. The defendant, however, has offered credible evidence demonstrating that the poor quality of the plaintiff's work led to her discharge. *See supra*, Part III.A.1.

As a result, even assuming that the plaintiff makes out a *prima facie* case, the Court finds no genuine issue of material fact exists regarding whether the defendant's legitimate, nondiscriminatory reason for terminating the plaintiff is pretextual. The Court therefore grants summary judgment to the defendant on the plaintiff's Title VII retaliation claim.

## A. § 1981 and § 1983

■ Beyond Title VII, Plaintiff Howell alleges her race-based termination violates 42 U.S.C. § 1981 and § 1983.[4] In response, Defendant SCAA asserts that the plaintiff's claims under these statutes are time-barred.

The United States Supreme Court has directed federal courts to apply each state's statute of limitations governing personal injury claims to § 1983 actions. *See Wilson v. Garcia*, 471 U.S. 261, 276, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985). Likewise, the United States Court of Appeals for the Sixth Circuit has held that § 1981 claims are subject to state statutes of limitations for personal injury actions. *See Demery v. Youngstown*, 818 F.2d 1257, 1261 (6th Cir.1987).

Ohio Revised Code 2305.10 provides Ohio's general statute of limitations for personal injury actions. *See* OH REV. CODE 2305.10. Under O.R.C. 2305.10, plaintiffs must file actions for bodily injury within two years of their accrual. *See id.*

The plaintiff's § 1981 and § 1983 claims are thus governed by a two-year statute of limitations. These claims accrued in November 1995, when the plaintiff was suspended and then terminated. The plaintiff filed this action on November 2, 1998. The plaintiff has not set forth any evidence

---

3. The plaintiff does not specify on what date she filed her grievance. The defendant's evidence suggests the grievance was filed on either October 18 or October 20, 1995. (*See* Def.'s Mot. Summ. J. at Ex. 10 & 11).

4. The plaintiff's complaint cites violations of both the Equal Protection Clause of the 14th Amendment and § 1983. The Court construes the complaint as seeking to redress an alleged equal protection violation through § 1983.

suggesting that the statute of limitations should be tolled in this case. Thus, the plaintiff's claims under § 1981 and § 1983 are time-barred.

Even if not time-barred, the plaintiff's § 1981 and § 1983 claims would fail for the same reasons cited with respect to the plaintiff's Title VII discrimination claim. When a plaintiff fails to overcome a motion for summary judgment under Title VII, the plaintiff's § 1981 and § 1983 claims fail as well. *See Gutzwiller v. Fenik*, 860 F.2d 1317, 1325 (6th Cir.1988) ("As this court has observed several times, the showing a plaintiff must make to recover on a disparate treatment claim under Title VII mirrors that which must be made to recover on an equal protection claim under section 1983."); *Murray v. Thistledown Racing Club, Inc.*, 770 F.2d 63, 69 (6th Cir.1985) (upholding summary judgment for failure to prove *prima facie* case of Title VII race discrimination and finding consequent failure of § 1981 claim as a matter of law).

Finding an absence of a material factual dispute, the Court grants summary judgment to the defendant on the plaintiff's § 1981 and § 1983 claims.

### B. Defamation

 Plaintiff Howell alleges that Defendant SCAA defamed the plaintiff:

Defendant intentionally, willfully, and maliciously made false accusations against plaintiff. Defendant stated in their charge with The Ohio Civil Rights Commission [sic] that Howell was incoherent and lethargic during administrative meetings, due to the fact she was being physically abused by her husband causing her to seek repeated treatment from area hospitals. Defendants knew that their allegations of abuse were totally untrue. Defendants knew that there had never been any incidents of domestic violence in Plaintiff's marriage

nor any hospital records of physical abuse.

(Pl.'s Compl. at II.12.)[5] In response, Defendant SCAA states that the plaintiff has offered no evidence to substantiate this claim.

 Under Ohio law, defamation is defined as a "false publication 'causing injury to a person's reputation, or exposing him to public hatred, contempt, ridicule, shame or disgrace, or affecting him adversely in his trade or business.'" *See Snyder v. Ag Trucking, Inc.*, 57 F.3d 484, 489 (6th Cir. 1995) (citing *Matalka v. Lagemann*, 21 Ohio App.3d 134, 136, 486 N.E.2d 1220, 1222 (1985)). To establish a *prima facie* case of defamation, the "plaintiff must show 'a publication to a third person for which the defendant is responsible, the recipient's understanding of the defamatory meaning, and its actionable character.'" *See id.* (quoting *Hahn v. Kotten*, 43 Ohio St.2d 237, 243, 331 N.E.2d 713, 718 (1975)).

In this case, the plaintiff has failed to offer evidence establishing a *prima facie* case of defamation. Indeed, the plaintiff has neglected to identify who made the alleged defamatory statement and on what date that statement was allegedly made.

Absent evidentiary support, the plaintiff has failed to create a triable issue of fact with regard to her defamation claim. Accordingly, the Court grants summary judgment to the defendant on the plaintiff's defamation claim.

### V. Conclusion

For the reasons stated herein, the Court grants defendant's motion for summary judgment.

**IT IS SO ORDERED.**

---

5. In alleging that the defendant has defamed her, the plaintiff asserts that her First Amendment rights have been violated. Unable to identify the First Amendment implications of the plaintiff's defamation claim, the Court analyzes this claim as one based solely on state law.