NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted August 15, 2013[*]
Decided August 21, 2013

**Before**

FRANK H. EASTERBROOK, *Chief Judge*

DIANE P. WOOD, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 13-1740

| | |
|---|---|
| GLORIA E. SWANSON, | Appeal from the United States District |
| *Plaintiff-Appellant,* | Court for the Northern District of |
| | Illinois, Eastern Division. |
| *v.* | |
| | No. 12 C 8290 |
| BAKER & McKENZIE, LLP, *et al.* | |
| *Defendants-Appellees.* | Amy J. St. Eve, |
| | *Judge.* |

## O R D E R

---

[*] After examining the briefs and record, we have concluded that oral argument is unnecessary. The appeal is therefore submitted on the briefs and record. See FED. R. APP. P. 34(a)(2)(C).

Seventeen years ago, Gloria Swanson left her position as a legal secretary with the law firm of Baker & McKenzie, where she had worked for five years. Her relationship with the partner to whom she was assigned was not a happy one, and so in May 1995, she requested a transfer. When Baker denied that request, Swanson decided to resign. Believing that the firm had allowed comparable white secretaries to transfer, Swanson (an African-American) refused to sign a release that would have prohibited her from suing Baker for racial discrimination. Later, however, she negotiated a more favorable arrangement.

After she left Baker, Swanson obtained comparable employment at other Chicago law firms, including a 14-year stint with one. She was laid off in March 2011, unfortunately, and found herself back on the job market. Although she sent out numerous résumés, her efforts at securing new employment were unsuccessful. She wondered why this was so, since it seemed that she was often rejected at the final stage, and so she hired a reference-checking company, Allison & Taylor, to look into the situation. When A&T contacted Baker around July 18, 2012, Human Resources Manager Patricia Griffin told them that Baker could not find Gloria Swanson in its system, and thus it could neither confirm nor deny her employment there. Later, Nancy Offdenkamp, who worked for Griffin, told Swanson that Baker's payroll system had changed, but that she would try to obtain access to the older records. Swanson found this suspicious, because Baker was able to confirm the employment of the partner for whom she had worked, even though he had died in 2007 after working for the firm for 50 years. Baker continued searching, and on September 13, 2012, Offdenkamp called A&T and informed them that Baker had located Swanson's employment records and was now in a position to confirm this information upon Swanson's signing a release. Swanson did so; Baker told A&T that she had worked there from February 2, 1990, through May 22, 1995; and it also confirmed Swanson's employment history to an attorney who wanted a reference for her.

In the meantime, Swanson filed a charge of racial discrimination with the Equal Employment Opportunity Commission on July 23, 2012, alleging that Baker had discriminated against her based on her race and had retaliated against her for engaging in protected activity. The EEOC issued her a right-to-sue letter on August 2, 2012, and she filed this action two weeks later. The district court dismissed under Federal Rule of

Civil Procedure 12(b)(6). Swanson challenges that decision on appeal, urging that her complaint states a plausible claim for relief.

To the extent that Swanson is attempting to resuscitate her allegations of racial discrimination in connection with her 1995 departure from Baker, it is plain that she cannot succeed. The complaint itself reveals that any such claim is time-barred. Even though the statute of limitations is an affirmative defense, district courts may grant judgment on the pleadings if there is no conceivable way to save the claim. That describes Swanson's case.

Swanson has also presented two theories that do not suffer from that flaw: first, she argues that the firm's responses to various requests for references in 2011 and 2012 amounted to retaliation against her for her 1995 accusations of racial discrimination; and second (relying on the district court's supplemental jurisdiction, 28 U.S.C. § 1367), she argues that Baker defamed her by giving false, negative information in response to inquiries from prospective employers. We address these in turn, reviewing the district court's decisions *de novo*.

With respect to her retaliation claim, Swanson urges that the district court erred by concluding that her complaint failed to allege any adverse employment action. She believes that Baker must have told prospective employers something adverse. In particular, she thinks that if she represented on her job application that she had worked for Baker between 1990 and 1995, yet Baker told the prospective employer that it could neither confirm nor deny her employment there, then the prospective employer would conclude that she was lying and would refuse to hire her. But, in the absence of any additional facts that would support that final inferential leap, this is the type of speculation that *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), identify as insufficient to pass muster under Rule 12(b)(6). The statement "we have searched our records and can neither confirm *nor* deny that X worked for us" says nothing about X's credibility. All it says is that Baker's record-keeping may leave something to be desired. This would be a different case, we can assume, if Baker had responded to the reference inquiry by saying that its records showed that Swanson had never worked there, but that is not what it said. Swanson's own complaint also shows that after two months of looking, Baker did find her records, confirmed her employment history to A&T, and then confirmed it to a prospective

employer. Taking every reasonable inference as favorably to Swanson as one can, this account does not portray retaliation of any kind. As the district court properly found, it does not state a claim upon which relief may be granted.

For similar reasons, Swanson's defamation claim was properly dismissed. Under Illinois law, which applies here, a plaintiff must show that the defendant made a false statement concerning her, that the defendant made an unprivileged publication of that defamatory statement to a third party, and that the plaintiff suffered damages as a result. *Seith v. Chicago Sun-Times, Inc.*, 861 N.E.2d 1117, 1126 (Ill. App. 2007). Swanson's complaint reveals that she cannot satisfy either of the first two requirements. Nothing but speculation suggests that Baker was lying when it said that it could not find her employment records. There is no reason to think that the records concerning partners would have been kept in the same place, in the same way, as records concerning staff. In addition, the statement that Baker could neither confirm nor deny her employment is not defamatory, because it is capable of an innocent construction. See *Lott v. Levitt*, 556 F.3d 564, 568 (7th Cir. 2009). Finally, the statements Swanson attributes to Baker were made to her own agent, A&T, which does not qualify as a third party for defamation purposes. See, *e.g., Snyder v. Ag Trucking, Inc.*, 57 F.3d 484, 489 (6th Cir. 1995).

As we said in an earlier case brought by Swanson, "a plaintiff must do better than putting a few words on paper that, in the hands of an imaginative reader, *might* suggest that something has happened to her that *might* be redressed by the law." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 403 (7th Cir. 2010). We have no doubt that the experience Swanson recounts in the current complaint was frustrating, but that does not automatically mean that some form of legal remedy exists. This time, she has not presented a set of facts that support a claim for relief.

The judgment of the district court is therefore AFFIRMED.