**Beverly A. KIRKLAND, Plaintiff,**

v.

**ST. ELIZABETH HOSPITAL,
Defendant.**

**No. 4:97 CV 1839.**

United States District Court,
N.D. Ohio,
Eastern Division.

Oct. 13, 2000.

---

**15.** *See* O.R.C. §§ 2911.21(A)(1), (4).

Martin S. Hume, Youngstown, OH, for plaintiff.

Ned C. Gold, Jr., Harrington, Hoppe & Mitchell, Warren, OH, for defendant.

*MEMORANDUM OF OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT*

WELLS, District Judge.

On 11 July 1997, plaintiff Beverly A. Kirkland filed a six-count complaint against defendant St. Elizabeth Medical Center ("St.Elizabeth"). Ms. Kirkland alleges the following causes of action: (1) violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.;* (2) violation of 42 U.S.C. § 1981; (3) violation of Ohio Rev.Code Ann. §§ 4112.05 and 4112.99; (4) breach of contract; (5) intentional infliction of emo-

tional distress; and (6) violation of Ohio public policy.

Plaintiff voluntarily dismissed her fifth cause of action (intentional infliction of emotional distress). On 11 June 1999, this Court granted a motion by Ms. Kirkland to amend her original complaint to sufficiently state causes of action for breach of an express written contract and breach of employment contract under the doctrine of promissory estoppel. Defendant filed a motion for summary judgment on the remaining counts; plaintiff filed an opposition; defendant filed a reply; and plaintiff filed a reply. Concurrently, plaintiff filed a cross motion for summary judgment as to her fourth cause of action for breach of contract; defendant filed an opposition; and plaintiff filed a reply. On 12 October 2000, the parties appeared for an oral hearing on the cross motions for summary judgment.

## I. *Factual Background*

Ms. Kirkland, an African American woman, began working at St. Elizabeth in April 1974. (Docket 17 at 1; Docket 31 at 1; Kirkland Dep. at 11). She worked as a secretary for the physical therapy department for several years. (Kirkland Dep. at 12, 16).

Beginning in 1992, Ms. Kirkland worked on a satellite campus for the physical therapy department. (Docket 17 at 2; Docket 31 at 2; Kirkland at 13–14). During this time she also worked for the industrial rehabilitation center, which was created as a branch of the physical therapy department. (Kirkland Dep. at 31). She was required to work both at the main hospital and the satellite campus. (Kirkland Dep. at 26). Roselyn Cera was the administrative head over the physical therapy department and the industrial rehabilitation center.

In 1994, Ms. Kirkland filed a grievance with the Ohio Civil Rights Commission. The grievance alleged that in November 1993 she was discouraged from bidding for a vacant secretarial position because she

was overqualified. She later learned that a Caucasian female was hired for the position. (Kirkland Dep. at 24–25). Ms. Kirkland did not pursue the claim, however, because she was offered a full-time secretarial position in the industrial rehabilitation center. (Kirkland Dep. at 27–28). This position allowed her to work on the satellite campus in one position rather than going back and forth between the satellite and main campuses. (Kirkland Dep. at 41–42).

In December 1995, St. Elizabeth decided to move the industrial rehabilitation department back to the physical therapy department on the main campus. (Cera Dep. at 11). At first, Ms. Cera told Ms. Kirkland that Ms. Kirkland's job would not be affected by the move to the main campus. (Kirkland Dep. at 78).

Around 1996, St. Elizabeth went through downsizing and changes in the administration. (Kirkland Dep. at 77–78). Also during this time, the hospital began using a computer program called Medi–Serve, which decreased the typing and billing responsibilities of secretarial positions. (Cera Dep. at 11). Because of budget concerns and the services provided by computers, St. Elizabeth concluded that the physical therapy department did not have the workload for two full-time secretaries. (Cera Dep. at 12; Lee Dep. at 16). The physical therapy department already had a secretary, an African American woman named Joyce Lee who had been an employee of St. Elizabeth for six months longer than Ms. Kirkland. (Kirkland Dep. at 72–73). In January 1996, Ms. Kirkland was informed that her position as rehabilitation therapy secretary would be eliminated when the hospital transferred the industrial rehabilitation department back into the physical therapy department. (Kirkland Dep. at 71). Ms. Cera made the decision to eliminate Ms. Kirkland's position. (Cera Dep. at 10). Her decision was not related to Ms. Kirkland's performance.

(Cera Dep. at 12). Ms. Kirkland was given an opportunity to bid on other positions at the hospital. (Kirkland Dep. at 72).

After Ms. Kirkland's position was eliminated, Diane Marquette, a Caucasian female physical therapist, did some secretarial work, such as answering the telephone and scheduling to assist Ms. Lee. Ms. Marquette kept her title as physical therapist and treated patients during this period. (Lee Dep. at 15–16; Kirkland Dep. at 80). Ms. Marquette's assistance was only temporary, and stopped in 1996. (Lee Dep. at 27).

Upon termination, St. Elizabeth offered Ms. Kirkland a severance package, which provided for biweekly payments of $873.60 for six months. (Rhodes Dep., Ex. 1). The last paragraph of the severance package agreement states:

> I understand that I am giving up any possible claims, demands or liabilities which I have ever had or may now have against SEHC arising out of my employment with SEHC. This includes (but is not limited to) rights arising under state and/or federal laws and regulations such as civil rights laws and whether or not I knew of the existence of any such claims or rights, excluding workers' compensation claims.

(Rhodes Dep., Ex 1). At the end of this paragraph, Ms. Kirkland wrote the words "not in agreement with," and signed the form. The employment coordinator of the human resources department, Christine Rhodes, signed the form on behalf of the hospital. (Rhodes Dep., Ex. 1).[1] Ms. Kirkland never received any severance payments. (Docket 31 at 3).

The Equal Employment Opportunity Commission issued a right to sue letter on 29 April 1997.

## II. *Standard for Summary Judgment*

Summary judgment is appropriate if the evidence in the record shows there is no

---

1. The record is not clear as to whether Ms. Rhodes signed the severance package agree-ment before or after Ms. Kirkland wrote "not in agreement with."

genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The Supreme Court has further explained:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Where the nonmoving party bears the burden of proof in the case, the initial burden on the moving party under Rule 56 "may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Betkerur v. Aultman Hosp. Ass'n,* 78 F.3d 1079, 1087 (6th Cir.1996).

"When a motion for summary judgment is made and supported as provided in [Rule 56], an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). The "mere existence of a scintilla of evidence in support of the [nonmovant]'s position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In considering a motion for summary judgment, the evidence must be viewed in the

light most favorable to the party opposing the motion, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), but "conclusory allegations standing alone will not defeat a properly supported motion for summary judgment." *White v. York Int'l Corp.,* 45 F.3d 357, 363 (10th Cir.1995).

### III. *Law and Analysis*

#### A. *Federal and State Discrimination Claims*

St. Elizabeth has filed a motion for summary judgment as to the federal and state discrimination claims in Ms. Kirkland's first, second, and third causes of action in the complaint.[2]

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to ... compensation, terms, conditions, privileges of employment, because of such individual's race." 42 U.S.C. § 2000e–2(a)(1). The Ohio Revised Code similarly prohibits discrimination on the basis of race. Ohio Rev.Code § 4112.02(A).

■ In order to prevail on her race discrimination claims, Ms. Kirkland must meet the tripartite standard of proof first articulated in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and later clarified in *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). First, Ms. Kirkland must make her prima facie case. Specifically, she must establish:

1. She belongs to a protected class

2. She suffered an adverse employment action

---

2. The Ohio Supreme Court has determined that "federal case law interpreting Title VII of the Civil Rights Act of 1964, Section 2000e *et seq.,* Title 42, U.S.Code, is generally applicable to cases involving alleged violations of [Ohio Revised Code] Chapter 4112." *Ohio*

*Civil Rights Com'n v. David Richard Ingram, D.C., Inc.,* 69 Ohio St.3d 89, 630 N.E.2d 669, 672 (1994) Ms. Kirkland's Title VII and Ohio Civil Rights Act claims will thus be analyzed together.

3. She was qualified for the position she held

4. She was replaced by someone outside the protected class, or similarly situated individuals were treated differently than she was.

*McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817; *Warfield v. Lebanon Correctional Institution,* 181 F.3d 723, 728 (6th Cir.1999).

■ The Sixth Circuit has further articulated a plaintiff's burden of proving a prima facie case in a work force reduction situation.

A work force reduction situation occurs when business considerations cause an employer to eliminate one or more positions within the company. An employee is not eliminated as part of a work force reduction when he or she is replaced after his or her discharge. However, a person is not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work. A person is replaced only when another employee is hired or reassigned to perform the plaintiff's duties.

*Barnes v. GenCorp Inc.,* 896 F.2d 1457, 1465 (6th Cir.1990). Under such circumstances, a plaintiff will not be able to meet the fourth element of the *McDonnell Douglas* test because he or she was not replaced by anyone. Therefore, the plaintiff must present "additional direct, circumstantial or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons." *Id.*

In this case, St. Elizabeth concedes that Ms. Kirkland has met the first three prongs of her prima facie case: she is African American; her employment with St. Elizabeth was terminated; and she was qualified for the position of secretary. (Docket 17 at 6). Ms. Kirkland, however, has the burden of demonstrating that she was replaced by someone outside of her protected class, that similarly situated persons were treated different than she was, or additional direct, circumstantial or statistical evidence tending to indicate that St. Elizabeth singled her out for discharge for impermissible reasons.

■ If Ms. Kirkland succeeds in establishing her *prima facie* case, the burden then shifts to St. Elizabeth to "articulate some legitimate, nondiscriminatory reason" for the different treatment of the employee. If St. Elizabeth carries this burden, Ms. Kirkland must prove by a preponderance of the evidence that the proffered reasons were pretextual. *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 120 S.Ct. 2097, 2106, 147 L.Ed.2d 105 (2000). In order to show pretext, Ms. Kirkland must demonstrate both that the proffered "reason was false and that discrimination was the real reason." *Cehrs v. Northeast Ohio Alzheimer Research Center,* 959 F.Supp. 441, 445 (N.D.Ohio 1997) (quoting *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 515, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)).

■ The burden of proof on the question of discrimination remains at all times with the plaintiff. *Hicks,* 509 U.S. at 518, 113 S.Ct. 2742.

Ms. Kirkland alleges three instances of discrimination to satisfy her prima facie case: (1) St. Elizabeth's termination of her position; (2) the fact that she did not receive her severance package; (3) the failure of St. Elizabeth to rehire her in 1998.

### 1. Discrimination When Ms. Kirkland Was Terminated

#### a. Prime Facie Case

■ Ms. Kirkland alleges she was discriminated against when she was terminated in 1996. Ms. Kirkland argues that she was replaced by Ms. Marquette to establish the fourth element of the *McDonnell/Burdine* test. As set forth in *Barnes,* however, Ms. Kirkland was not replaced

by either Ms. Lee or Ms. Marquette because the undisputed evidence establishes that they were not hired or reassigned to perform Ms. Kirkland's duties. Instead, Ms. Lee and Ms. Marquette were assigned to perform Ms. Kirkland's duties in addition to their other duties. Ms. Kirkland has presented no evidence to dispute that Ms. Marquette continued to treat patients, and only performed limited secretarial tasks for a temporary period after Ms. Kirkland's position was eliminated. Moreover, Ms. Kirkland has not presented any other facts to demonstrate that St. Elizabeth "singled [her] out for discharge for impermissible reasons." To the contrary, when her position was eliminated she was given the opportunity to apply for other positions within the hospital. (Kirkland Dep. at 72).

### b. Legitimate, Nondiscriminatory Reason

■ Even if Ms. Kirkland satisfied her prima facie case of racial discrimination, the defendants have presented a legitimate, nondiscriminatory reason for terminating Ms. Kirkland. It is undisputed that St. Elizabeth went through downsizing, the industrial rehabilitation and physical therapy departments merged, and secretarial responsibilities decreased because of computers. (Kirkland Dep. at 77–78; Cera Dep. at 11). All of these business factors combined created a legitimate reason to eliminate Ms. Kirkland's job position.

### c. Pretext

■ Finally, Ms. Kirkland has not demonstrated by a preponderance of the evidence that the stated reasons for eliminating her positions were pretextual and the real reason was discriminatory. In particular, when the physical therapy department and industrial rehabilitation department merged, the supervisor Ms. Cera decided to eliminate one of the two secretarial positions. Ms. Kirkland's position was eliminated, and Ms. Lee, also an African American woman, kept the remaining

secretarial position. Another secretarial position, held by a Caucasian woman named Bonnie Nosal, was eliminated a few months later. (Cera Dep. at 29).

### 2. Discrimination in Giving Severance Packages

### a. Prima Facie Case

■ Ms. Kirkland argues that she has met her prima facie case of racial discrimination because Bonnie Nosal, a Caucasian secretary whose position was also eliminated, received a severance package and Ms. Kirkland did not. Ms. Kirkland and Ms. Nosal, however, are not similarly situated. Ms. Kirkland wrote "not in agreement with" on the waiver of grievances provision of her severance package contract. The legal effect of Ms. Kirkland's notation will be discussed below, but by writing this statement Ms. Kirkland did not accept the severance package that was originally offered to her. St. Elizabeth argues that "Bonnie Nosal did not make a notation on her severance agreement indicating that she did not agree with the contractual provisions," (Docket 35 at 3), and Ms. Kirkland has presented no evidence to the contrary. Without such evidence, there is no genuine issue of fact, and Ms. Kirkland has not demonstrated she is similarly situated to Ms. Nosal. Therefore, she has not satisfied her prima facie case of discrimination under this set of facts.

### b. Legitimate, Nondiscriminatory Reason

■ Even if Ms. Kirkland has demonstrated her prima facie case of racial discrimination because she did not receive her severance package and Ms. Nosal did, St. Elizabeth has presented a legitimate, nondiscriminatory reason for the different treatment. As discussed above, Ms. Kirkland wrote "not in agreement with" under the clause in the severance package contract that required Ms. Kirkland to waive her rights to worker's compensation or any claims or grievances against St. Elizabeth. Ms. Kirkland's notation on the contract

created a contract dispute over the terms of the contract or whether a contract was even formed. This dispute was a legitimate, nondiscriminatory reason for St. Elizabeth to pay Ms. Nosal but withhold payment from Ms. Kirkland.[3]

#### c. Pretext

Finally, Ms. Kirkland has not demonstrated by a preponderance of the evidence that the stated reason for not paying her under the severance package was pretextual and the real reason was discriminatory. The pleadings of both parties demonstrate that St. Elizabeth and Ms. Kirkland interpret the contract differently. Thus, while St. Elizabeth's failure to make severance payments to Ms. Kirkland may give rise to a claim for breach of contract, the record is devoid of evidence that these actions were pretextual.

#### 3. Failure of St. Elizabeth to Rehire Ms. Kirkland in 1998

#### a. Prima Facie Case

Ms. Kirkland also alleges that in June 1998, she learned that St. Elizabeth was hiring physical therapy aids, contacted Ms. Cera, and applied for that position. (Docket 31 at 4). She alleges that "she was told she would be considered, but she was never contacted." (Docket 31 at 4; Kirkland Dep. at 112–113). Finally, she alleges "[b]oth of the individuals hired were Caucasian." (Lee Dep. at 25). There is some dispute, however, whether Ms. Kirkland even submitted her resume to be considered for the position. (Docket 35 at 3).

#### b. Legitimate, Nondiscriminatory Reason

■ Even if Ms. Kirkland has demonstrated her prima facie case of racial discrimination because she was not rehired, St. Elizabeth has presented a legitimate,

nondiscriminatory reason. St. Elizabeth alleges, and Ms. Kirkland does not contend otherwise, that Ms. Kirkland did not submit the necessary documents to the appropriate supervisor in order to be considered for the position. (Docket 35 at 3).

#### c. Pretext

Finally, Ms. Kirkland has presented no evidence that St. Elizabeth's actions in not rehiring Ms. Kirkland in 1998 were pretextual. Without such evidence, there is no genuine issue of material fact as to whether St. Elizabeth's action were pretextual.

&ast; &ast; &ast; &ast; &ast; &ast;

In sum, there is no genuine issue of material facts as to any of Ms. Kirkland's discrimination theories. She has not satisfied her prima facie case of discrimination under any of her three posited theories. Even assuming arguendo that Ms. Kirkland could establish her prima facie case of discrimination, St. Elizabeth has offered legitimate nondiscriminatory reasons and Ms. Kirkland has not shown that the stated reasons were pretextual and the real reasons were discriminatory. Thus, St. Elizabeth is entitled to summary judgment as a matter of law. Summary judgment is granted in favor of St. Elizabeth as to Ms. Kirkland's first, second and third causes of action for racial discrimination in violation of federal and state law.

#### B. Breach of the Severance Package Contract

There are cross motions for summary judgment pending on Ms. Kirkland's breach of contract claim.

■ To establish a breach of contract claim, Ms. Kirkland must prove: (1) the existence of a contract; (2) performance by Ms. Kirkland; (3) breach by St. Elizabeth; (4) and damage or loss to Ms. Kirkland. *Nilavar v. Osborn*, 127 Ohio App.3d 1, 711 N.E.2d 726, 732 (1998). To

---

**3.** In describing St. Elizabeth's actions as "legitimate," this Court is not yet reaching the merits of Ms. Kirkland's breach of contract

claim. Rather, it is concluding that there was a business justification for withholding Ms. Kirkland's severance payment.

prove the existence of a contract, Ms. Kirkland must show the elements of mutual assent—that there was an offer and an acceptance—and consideration. Ms. Kirkland must also show that there was a "meeting of the minds" and that the contract was definite as to its essential terms. *Id.*

There is a dispute about whether the parties mutually assented to the contract, as modified. Although Ms. Kirkland wrote the statement "not in agreement with" next to the waiver of grievances clause, she argues that it is still an enforceable contract because it was signed by Ms. Kirkland and Ms. Rhodes, the person who had authority to enter into such agreements on behalf of St. Elizabeth. (Docket 24 at 2). During Ms. Rhodes deposition, she stated that she assumed Ms. Kirkland had been paid under the severance package because Ms. Rhodes had given the paper work to the employee responsible for generating severance packages. (Rhodes Dep. at 14). Ms. Kirkland argues that Ms. Rhodes' statement demonstrates that she intended to form a severance contract with Ms. Kirkland, even though Ms. Kirkland had made written alterations to the terms of the agreement. (Docket 24 at 3). She, thus, urges this Court to interpret only "the four corners" of the contract.

On the other hand, Ms. Rhodes stated that she didn't recall whether Ms. Kirkland's notation "not in agreement with" was written on the agreement when she signed it. (Rhodes Dep. at 12). Further, there is evidence that the hospital contacted Ms. Kirkland because her severance package agreement, as modified by her, did not form a binding contract. In addition, Ms. Kirkland testified in her deposition that she did not believe a contract was formed because she did not agree with its terms.

A. There was a severance package that was offered and—

Q. To you?

A. Yes, and when I went through the papers to sign the different papers there was a paragraph within the package, that contract, that I was not in agreement with, and I underlined that paragraph and wrote a note saying, "not in agreement with," initialed it, and then signed the rest of the papers.

I was called a couple of days after that and told that I needed to come back in, and sign another contract without the comment I had made, and I told them that I was not in agreement with that one paragraph, and I was told that if I did not sign it that I would not get my severance, and I did not get my severance.

. . .

Q. You didn't reach agreement with the hospital on the severance package; did you?

A. Just on that one paragraph, yes.

Q. Everything else, but you did not reach agreement on that and they said that if you don't agree with that you don't get the severance, correct?

A. They told me that that was in all of their contracts, and if I did not sign it I would not get my severance.

Q. So, you didn't agree, so you didn't get severance?

A. Right.

(Kirkland Dep. at 93).

This dispute as to whether there was mutual assent is not dispositive, however, because even if there was mutual assent to form a contract that excluded the waiver of grievances provision, there was no consideration on the part of Ms. Kirkland. Ms. Kirkland alleges that in consideration for severance payments, she gave up her job at St. Elizabeth. (Docket 24 at 3). To the contrary, the undisputed evidence is that Ms. Kirkland's job was eliminated in January 1996, two months prior to the severance package offer. Thus, Ms. Kirkland did not give up her position in consideration for receiving the severance

package. Furthermore, the plain reading of the terms of the severance agreement reveals that the only consideration for St. Elizabeth's offer of a severance package was that Ms. Kirkland forego her right to sue St. Elizabeth and to collect workers' compensation. If the severance agreement is read without the waiver of grievances provision, it does not contain any consideration on the part of Ms. Kirkland in exchange for the hospital making severance payments to her. Thus, even if there was mutual assent of the parties to the contract, the contract lacks consideration, as amended by Ms. Kirkland's notation "not in agreement with."

Therefore, no contract was formed as a matter of law, and Ms. Kirkland has no cause of action for breach of contract. St. Elizabeth's motion for summary judgment is granted and Ms. Kirkland motion for summary judgment is denied.

### C. Promissory Estoppel

■ To make a prima facie case for promissory estoppel Ms. Kirkland must show: (1) a clear and unambiguous promise; (2) reliance upon the promise; (3) reliance that is both reasonable and foreseeable; and (4) injury to herself as a result of the reliance. *Weiper v. W.A. Hill Associates,* 104 Ohio App.3d 250, 260, 661 N.E.2d 796 (1995). The promissory estoppel doctrine is applicable to oral employment-at-will agreements if (1) the employer should have reasonably expected its promise to be relied upon by its employee; and (2) the employee actually and detrimentally relied on the promise. *Mers v. Dispatch Printing Co.,* 19 Ohio St.3d 100, 483 N.E.2d 150 (1985) (syllabus).

In *Snyder v. Ag Trucking, Inc.,* 57 F.3d 484 (6th Cir.1995), the Sixth Circuit upheld summary judgment in favor of a defendant on a promissory estoppel claim. The *Snyder* court concluded that promises made by a supervisor at a trucking company, including the promise that there would be a position for an employee when a new trucking terminal opened, "were general comments about career growth and company policy; they are not sufficiently specific to change plaintiff's at will status." *Id.* at 489.

■ In this case, Ms. Kirkland alleges that her supervisors, Ms. Cera and Ms. D'Egidio, promised her she would not lose her job when the industrial rehabilitation department moved back to the main campus. (Docket 31 at 8; Kirkland Dep. at 101–102, 108, 109). Ms. Kirkland described this alleged promise in her deposition:

Q. Tell us the exact words and who made them.

A. It was during my conversation with Roselyn Cera. I asked about, you know, when the department transferred, you know, if we were going to all be going over there and I was told yes, that I would be transferring because it was only the two of us. It was only Cindy and myself.

Q. That is all she said to you then?

A. Yes. You know, she told me my job was not in jeopardy, and I would be transferring back with the department.

(Kirkland Dep. at 108). Like the promises in *Snyder,* this promise is a general statement and not sufficiently definite to support a cause of action under promissory estoppel.

■ Even if the promise was sufficiently definite, however, the record demonstrates that Ms. Kirkland did not actually or detrimentally rely on her supervisor's statements.

Q. What if [Ms. Cera] hadn't made that promise that was made? What would you have done; quit your job and gone somewhere else?

A. If she had not made that? I had no reason to feel as though I would not be transferred back with Cindy.

Q. With or without that promise?

A. Right. You know what I mean? Up until that point when they started making plans to transfer the rehabilitation department back within the department, my job as well as Cindy's jobs were included in part of the plans. So, whenever any conversation was made regarding the transfer back, there was never any conversation that would lead me to think that I was not going back with the department.

(Kirkland Dep. at 106). As stated above, actual and detrimental reliance are two factors necessary to support a prima facie case of promissory estoppel. Ms. Kirkland's deposition reveals that she did not believe her job was in jeopardy with or without the alleged promise made by Ms. Cera. Thus, Ms. Kirkland has failed to demonstrate that she actually or detrimentally relied on Ms. Cera's promise.

■ Further, Ms. Kirkland's alleged reliance on the statements of Ms. Cera and Ms. D'Egidio was not reasonable. During Ms. Kirkland's deposition, she was asked to review St. Elizabeth's employee manual, which states:

This handbook is not a contract nor part of a contract and no employee has any contractual rights in regard to matters included in this book. Further, no member of the management staff has the authority to make any form of contract with you in regard to your hospital employment relationship, including pay and benefits, nor a commitment of continuing employment. Either you or the Medical Center can terminate your employment at any time.

(Kirkland Dep. at 104). She acknowledged that the employee manual applied to her at all times. (Kirkland Dep. at 5). This statement in the employee handbook supports the conclusion that it was unreasonable for Ms. Kirkland to rely on the promises of her supervisor.

There is no genuine issue of material facts. Based on the evidence viewed in a light most favorable to Ms. Kirkland, she cannot meet her prima facie case for the promissory estoppel claim and St. Elizabeth is entitled to summary judgment as a matter of law.

### D. Violation of Public Policy

■ To establish a prima facie case of wrongful termination in violation of public policy, Ms. Kirkland must establish the following:

1. A clear public policy existed, and was manifested in a state or federal constitution, statute or administrative regulation, or in common law;

2. Dismissing employees under circumstances like those involved in Ms. Kirkland's dismissal would jeopardize the public policy;

3. Ms. Kirkland's dismissal was motivated by conduct related to the public policy;

4. St. Elizabeth lacked overriding legitimate business justification for the dismissal.

*Kulch v. Structural Fibers, Inc.*, 78 Ohio St.3d 134, 677 N.E.2d 308, 321 (1997).

Courts have summarily dismissed public policy claims, however, when the plaintiff has failed to establish a prima facie case for the underlying discrimination claim.

[T]o prevail on a public policy claim premised on discrimination, a plaintiff first must establish the predicate acts of discrimination. If the plaintiff is unable to make a prima facie case that she was discriminated against in violation of § 4112, she would be unable to establish that her discharge violated public policy against discrimination reflected in that statute.

*Ilius v. American National Can Co.*, Case No. 96–CV–1098, page 4 (N.D.Ohio 1998) (unreported); *see also Martin v. Huntington Nat. Bank*, No. L–95–007, 1995 WL 680014, *3 (Ohio Ct.App. Nov. 17, 1995) (rejecting public policy claim when plaintiff failed to establish discrimination claim).

Thus, because summary judgment has been granted above in favor of St. Elizabeth on the claims of discrimination, breach of contract, and promissory estoppel, summary judgment is also granted in favor of St. Elizabeth on the violation of public policy claim.

### IV.  *Conclusion*

For the reasons set forth above, the motion for summary judgment filed on behalf of St. Elizabeth is granted, on the grounds there is no genuine issue as to any material facts and the movant is entitled to judgment as a matter of law.  Fed. R.Civ.P. 56(c);  *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  The motion for summary judgment filed on behalf of Ms. Kirkland is denied.

IT IS SO ORDERED.

### *JUDGMENT ENTRY*

This Court, having previously entered its memorandum of opinion and order granting defendant's motion for summary judgment and denying plaintiff's motion for summary judgment, hereby enters judgment in favor of defendant St. Elizabeth Hospital and against plaintiff Beverly A. Kirkland.  Ms. Kirkland shall pay costs.

IT IS SO ORDERED.