Beverly **KIRKLAND**, Plaintiff–Appellant,

v.

**ST. ELIZABETH HOSPITAL MEDICAL CENTER,** Defendant–Appellee.

No. 00–4454.

United States Court of Appeals, Sixth Circuit.

March 29, 2002.

---

Before MOORE, COLE, and FARRIS,* Circuit Judges.

## OPINION

MOORE, Circuit Judge.

Plaintiff–Appellant Beverly A. Kirkland ("Kirkland"), an employee of Defendant–Appellee St. Elizabeth Hospital Medical Center ("Hospital") for more than twenty years, appeals the district court's grant of summary judgment to the Hospital on her claims of racial discrimination, breach of contract, and promissory estoppel. We AFFIRM the district court's decision.

I

From 1974 to 1996, Kirkland held various positions in the Hospital, eventually becoming a secretary for the physical therapy ("PT") department. In 1992, Kirkland agreed to transfer to the PT department at one of the Hospital's satellite units. When the Hospital developed a new industrial rehabilitation ("IR") program as part of the PT department at the satellite unit, Kirkland became its full-time secretary.

In December 1995, the Hospital decided to move the IR program at the satellite unit back to the PT department at the main hospital. Kirkland was assured that the move would not affect her job.[1] Due to various downsizing and cost-cutting measures, however, Kirkland was told in January 1996 that her position as the IR secretary would be eliminated and that she could transfer into any available position for which she was qualified. Kirkland wanted to transfer back into the PT department at the main hospital, but the Hospital had previously determined that the PT department could manage with its secretary, Joyce Lee, who was senior in tenure to Kirkland and who, like Kirkland, is African–American. When Kirkland could not find another position within the Hospital, she was offered biweekly payments of $873.60 for six months as severance pay. The agreement included the following waiver of rights:

> I understand that I am giving up any possible claims, demands or liabilities which I have ever had or may now have against [the Hospital] arising out of my employment with [the Hospital]. This includes (but is not limited to) rights arising under state and/or federal laws and regulations such as civil rights laws and whether or not I knew of the exis-

---

* The Honorable Jerome Farris, Circuit Judge for the United States Court of Appeals for the Ninth Circuit, sitting by designation.

1. According to Kirkland, this assurance came from Roselyn Cera ("Cera"), the Hospital's manager of rehabilitation services. Although Cera later denied making such a statement, we construe the evidence in the light most favorable to Kirkland because this appeal is from a grant of summary judgment.

tence of any such claims or rights, excluding workers' compensation claims.

Joint Appendix ("J.A.") at 233. Kirkland did not agree with this provision and therefore wrote the words "not in agreement with" next to the waiver before signing the form. J.A. at 167. The Hospital then told Kirkland that she would not receive her severance pay if she did not agree to the waiver. Kirkland did not agree and did not receive any severance pay.

On May 23, 1996, Kirkland filed a complaint with the Ohio Civil Rights Commission, which found after investigation that the Hospital had not discriminated against Kirkland. On April 29, 1997, the Equal Employment Opportunity Commission adopted this finding and issued a right to sue letter. On July 11, 1997, Kirkland filed a complaint in the district court, alleging (1) racial discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, 42 U.S.C. § 1981, and Ohio Revised Code § 4112.05; (2) breach of contract; (3) intentional infliction of emotional distress; and (4) violation of Ohio public policy. Kirkland voluntarily dismissed the cause of action for intentional infliction of emotional distress. On June 11, 1999, the district court granted Kirkland's motion to amend the original complaint to include claims for breach of an express written contract and breach under the doctrine of promissory estoppel.

On September 15, 1998, the Hospital filed a motion for summary judgment; the next day, Kirkland moved for summary judgment on the breach of contract claim. After hearing oral argument, the district court granted summary judgment in favor of the Hospital. *Kirkland v. St. Elizabeth Hosp.*, 120 F.Supp.2d 660, 672 (N.D.Ohio 2000). This timely appeal followed.

## II

We review de novo a district court's grant of summary judgment. *Mt. Lebanon Pers. Care Home, Inc. v. Hoover Universal, Inc.*, 276 F.3d 845, 848 (6th Cir. 2002). Summary judgment is appropriate when the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). "[W]e construe the evidence and draw all reasonable inferences [from the underlying facts] in the light most favorable to the nonmoving party." *Meyers v. IRS*, 196 F.3d 622, 624 (6th Cir.1999). However, if "the record taken in its entirety could not convince a rational trier of fact to return a verdict in favor of the nonmoving party," this court will affirm the grant of summary judgment. *Id.* (quoting *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir.1995)).

## A

 Kirkland argues that the Hospital discriminated against her on the basis of race, which is unlawful under federal and Ohio law. 42 U.S.C. §§ 1981 and 2000e–2(a)(1); OHIO REV.CODE § 4112.02(A).[2] To prevail, Kirkland must first carry the burden of establishing a prima facie case, which requires her to show: (1) that she is a member of a protected class; (2) that she suffered an adverse employment action; (3) that she was

---

**2.** As the district court noted, Title VII caselaw "is generally applicable to cases involving alleged violations of [Ohio Revised Code] Chapter 4112." *Kirkland*, 120 F.Supp.2d at 665 n. 2 (quoting *Ohio Civil Rights Comm'n v. David Richard Ingram, D.C., Inc.*, 69 Ohio St.3d 89, 630 N.E.2d 669, 672 (1994)). Title VII caselaw also applies to claims arising under 42 U.S.C. § 1981. *Newman v. Fed. Express Corp.*, 266 F.3d 401, 406 (6th Cir.2001). We will therefore analyze all of Kirkland's discrimination claims together.

qualified for her position; and (4) that she was either replaced by someone outside of her protected class or treated differently from similarly situated individuals. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Hoskins v. Oakland County Sheriff's Dep't,* 227 F.3d 719, 731 (6th Cir. 2000). In the case of a workforce reduction, when an employer eliminates a position without hiring or reassigning another employer to perform the duties of the eliminated employee, we have held that a plaintiff may meet the fourth element of the *McDonnell Douglas* test by presenting "additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons." *Barnes v. GenCorp Inc.,* 896 F.2d 1457, 1465 (6th Cir.), *cert. denied,* 498 U.S. 878, 111 S.Ct. 211, 112 L.Ed.2d 171 (1990).

■ Once a plaintiff has successfully established a prima facie case, the burden of production then "shift[s] to the employer to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817. If the employer carries this burden, the plaintiff must prove by a preponderance of the evidence that the employer's stated reason was pretextual. *Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Pretext requires a showing "that the [employer's] asserted reasons have no basis in fact, that the reasons did not in fact motivate the discharge, or, if they were factors in the [employer's] decision, that they were jointly insufficient to motivate the discharge." *Hoskins,* 227 F.3d at 731 (quoting *Warfield v. Lebanon Corr. Inst.,* 181 F.3d 723, 729 (6th Cir.1999)).

Kirkland alleges that the Hospital discriminated against her by (1) eliminating her position in 1996, (2) failing to honor the severance agreement, and (3) not rehiring her in 1998, when she expressed interest in a position as a Physical Therapy aide. The district court applied the *McDonnell Douglas* test to all three of Kirkland's claims and determined that none had merit. *Kirkland,* 120 F.Supp.2d at 666–68. After reviewing the record, we adopt the district court's determination and affirm its grant of summary judgment to the Hospital on these claims.

**B**

■ Kirkland also argues that she entered into a contract with the Hospital concerning severance pay that the Hospital subsequently breached. To establish a breach of contract claim, a plaintiff must prove (1) the existence of a contract, which requires an offer, acceptance, and consideration; (2) performance by the plaintiff; (3) breach by the defendant; and (4) damage or loss to the plaintiff. *Nilavar v. Osborn,* 127 Ohio App.3d 1, 711 N.E.2d 726, 732 (1998). "The plaintiff must also show that there was a 'meeting of the minds' and that the contract was definite as to its essential terms." *Id.* The district court found that there was a factual dispute about mutual assent but that a lack of consideration meant, as a matter of law, that no contract had been formed between Kirkland and the Hospital:

> Ms. Kirkland alleges that in consideration for severance payments, she gave up her job at St. Elizabeth. To the contrary, the undisputed evidence is that Ms. Kirkland's job was eliminated in January 1996, two months prior to the severance · package offer. Thus, Ms. Kirkland did not give up her position in consideration for receiving the severance package. Furthermore, the plain reading of the terms of the severance agreement reveals that the only consideration for St. Elizabeth's offer of a severance

package was that Ms. Kirkland forego her right to sue St. Elizabeth and to collect workers' compensation. If the severance agreement is read without the waiver of grievances provision, it does not contain any consideration on the part of Ms. Kirkland in exchange for the hospital making severance payments to her. Thus, even if there was mutual assent of the parties to the contract, the contract lacks consideration, as amended by Ms. Kirkland's notation "not in agreement with."

*Kirkland*, 120 F.Supp.2d at 669–70 (internal citation omitted).

■ Our review of the record indicates that the issue of consideration is an open question whose resolution depends on a close examination of the original offer and acceptance. Under Ohio law, severance pay is "a form of deferred compensation for continued service," *Helle v. Landmark, Inc.*, 15 Ohio App.3d 1, 472 N.E.2d 765, 772 (1984), and Ohio courts have held enforceable contracts for the payment of severance benefits where employees accepted an employer's offer and furnished consideration by continuing to work after learning of the severance pay. *See, e.g., Bolling v. Clevepak Corp.*, 20 Ohio App.3d 113, 484 N.E.2d 1367, 1374 (1984); *Helle*, 472 N.E.2d at 775–76. We therefore believe that there is a genuine issue as to the material fact of whether the Hospital offered employees a standard severance package (perhaps contained in an employment manual, which Kirkland could have rendered enforceable by retaining her position and continuing to work) or made an individualized offer at the time of termination.

■ However, drawing all reasonable inferences in the light most favorable to Kirkland, we observe that Kirkland did not accept the Hospital's offer. Instead, she rejected it and made a counteroffer, which retained her right to sue. We will assume

at this stage of the proceedings that Kirkland wrote "not in agreement with" to the waiver provision before Christine Rhodes ("Rhodes"), the Hospital's employment coordinator, signed the severance form for the Hospital. Then the question is whether there was a meeting of the minds – except that this question presupposes that Rhodes had the power to bind the Hospital by accepting the new terms that Kirkland offered. Kirkland has not shown that Rhodes had such authority. In fact, she has acknowledged that the Hospital did not grant any authority to its management staff "to make any form of contract with [employees] in regard to [their] hospital employment relationship, including pay and benefits." J.A. at 177–78. After receiving the amended severance agreement, the Hospital told Kirkland that she would have to sign an unmodified form to receive severance benefits, and Kirkland refused to do so. We therefore hold that the district court did not err in granting summary judgment to the Hospital on the breach of contract claim.

### C

■ Kirkland's final argument relates to Cera's alleged promise of continued employment. In Ohio, employment is generally presumed to be at will. *Mers v. Dispatch Printing Co.*, 19 Ohio St.3d 100, 483 N.E.2d 150, 151, 153 & n. 1 (1985) ("Unless otherwise agreed, either party to an oral employment-at-will agreement may terminate the employment relationship for any reason which is not contrary to law."). However, the *Mers* Court recognized that the doctrine of promissory estoppel was "a viable exception" to the general rule: "A promise which [an employer] should reasonably expect to induce action or forbearance on the part of the [employee] and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." *Id.* at 154 (quotation omitted).

The district court granted summary judgment to the Hospital on the grounds that (1) Cera's alleged promise was "a general statement and not sufficiently definite to support a cause of action under promissory estoppel," (2) Kirkland did not rely actually and to her detriment on that statement, and (3) any reliance would have been unreasonable, because the Hospital's employment manual stipulated that "no member of the management staff has the authority to make any form of contract with you in regard to your hospital employment relationship, including pay and benefits, nor a commitment of continuing employment." *Kirkland*, 120 F.Supp.2d at 670–71.

Although we believe that there are genuine issues of material fact regarding Cera's statement and Kirkland's reliance on that statement, we conclude that a rational trier of fact could not find that Kirkland's reliance was reasonable. *Cf. Mers*, 483 N.E.2d at 152, 155 (holding "that the meaning of the [employer]'s promise, and whether the acts flowing from it were reasonable, are questions of fact for jury determination," where the employee alleged that the employer had promised reinstatement both orally and through provisions in the company's handbook). In this case, the Hospital's manual, of which Kirkland was aware, explicitly disavowed any institutional commitment to continued employment. We therefore hold that the district court did not err in granting summary judgment to the Hospital on the promissory estoppel claim.

## CONCLUSION

For the foregoing reasons, we AFFIRM the decision of the district court.