Darrell GILES, Plaintiff–Appellant,

v.

NORMAN NOBLE, INC., Defendant–Appellee.

No. 02–3833.

United States Court of Appeals, Sixth Circuit.

Feb. 24, 2004.

L. Stewart Hastings, Jr., Cleveland, OH, Gary S. Singletary, Cleveland, OH, for Plaintiff-Appellant.

Joel R. Hlavaty, Rebecca Jane Bennett, Frantz Ward, Cleveland, OH, for Defendant-Appellee.

---

* The Honorable Curtis L. Collier, United States District Judge for the Eastern District of Ten-  nessee, sitting by designation.

Before COLE and CLAY, Circuit Judges; and COLLIER, District Judge.*

## OPINION

COLLIER, District Judge.

Plaintiff–Appellant Darrell Giles ("Giles") brought suit against Defendant–Appellee Norman Noble, Inc. ("NNI"), under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et. seq.* and Ohio Revised Code Chapter 4112, alleging NNI discriminated against him based on race when it terminated his employment. Giles also brought a claim of wrongful termination under Ohio common law. The District Court granted summary judgment to NNI, concluding Giles failed to present a *prima facie* case of race discrimination, failed to produce evidence for a jury to find NNI's legitimate nondiscriminatory reason for terminating him was a pretext for race discrimination, and failed to offer evidence supporting a wrongful termination claim. Because we conclude the District Court acted properly, we **AFFIRM** the District Court's grant of summary judgment in all respects.

## I. FACTS AND PROCEDURE

Plaintiff Giles is a black male who began working at Defendant NNI in November 1997. He spent most of his time operating equipment to inspect medical stents, such as those used in certain heart surgeries, that NNI manufactured. When Giles began his employment he received a copy of company documents containing a zero-tolerance sexual harassment policy. In 1998 a female employee complained to NNI that Giles exposed his genitals to her at work. Giles denies the alleged conduct, and NNI was unable to corroborate the allegation.

Giles received a verbal warning and was reminded about the sexual harassment policy.

In July 2000, NNI employee Kim Kopera told NNI that Giles approached her, removed his pants, and exposed his genitals to her while they were working. NNI Human Resources Director Sharon Ceglie investigated and learned another employee, Jan Lundblad, witnessed the alleged incident and had also seen Giles expose himself on a different occasion. Kopera and Lundblad further claimed Giles routinely made sexual comments to them about female employees' bodies and his desire to be sexually involved with some of them. Giles denies the conduct the women reported to NNI, and he denied it when asked by NNI just before his termination. Based on its determination the allegations were true, NNI terminated Giles on July 11, 2000, for the alleged sexual misconduct. NNI did not fill Giles' position after his termination, but rather spread the work among the three other inspection machine operators who were currently serving in that capacity.

Several friends and coworkers of Giles provided affidavits stating they perceived a racial bias in the actions of NNI. They also believed they would have witnessed the misconduct allegedly committed by Giles, and they suggest it therefore did not occur. Further, they thought there were attempts by NNI to solicit allegations of misconduct against Giles in order to set him up for termination. Giles states a supervisor pressured him to falsify his medical stent test results so faulty stents would be marked as good stents even if they failed to pass inspection. Giles argues NNI fabricated "racially stereotypical" allegations against him and terminated him to prevent Giles from revealing the false test results.

According to NNI Human Resources Director Ceglie, a caucasian employee named Jim Burger viewed sexually explicit material on a computer in the workplace. Employee Nancy Desantis adds Burger was caught showing the pictures to others. NNI disciplined Burger for this conduct, and according to Ceglie, NNI had no knowledge of Burger exposing his genitals to others in the workplace.

Giles brought suit against NNI, alleging NNI discriminated against him based on his race when it terminated him and that NNI terminated him in retaliation for refusal to falsify test results. NNI filed a motion for summary judgment, which the District Court granted. Giles now appeals the District Court's ruling.

## II. STANDARD OF REVIEW

The Court reviews *de novo* a district court's order granting summary judgment. *Smith v. Ameritech,* 129 F.3d 857, 863 (6th Cir.1997). Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Initially, the burden is on the moving party to conclusively show no genuine issues of material fact exist, *Leary v. Daeschner,* 349 F.3d 888, 897 (6th Cir.2003), and the Court must view the evidence and draw all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587–88, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). However, the nonmoving party is not entitled to a trial merely on the basis of allegations, but must come forward with some significant probative evidence to support its claim. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). If the nonmoving party fails to

make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to summary judgment. *Id.* at 323, 106 S.Ct. at 2552.

The Court determines whether sufficient evidence has been presented to make the issue of fact a proper jury question, but does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986); *Weaver v. Shadoan,* 340 F.3d 398, 405 (6th Cir. 2003). The standard for summary judgment mirrors the standard for directed verdict. *Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511. The Court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52, 106 S.Ct. at 2512. There must be some probative evidence from which the jury could reasonably find for the nonmoving party. If the Court concludes a fair-minded jury could not return a verdict in favor of the nonmoving party based on the evidence presented, it may enter a summary judgment. *Id.; Lansing Dairy, Inc. v. Espy,* 39 F.3d 1339, 1347 (6th Cir.1994).

## III. ANALYSIS

### A. Race Discrimination Claim

Giles brought a race discrimination claim under Title VII and under Chapter 4112 of the Ohio Revised Code. Because federal case law governing Title VII actions is generally applicable to discrimination claims under Ohio law, we will analyze Giles' race discrimination claim in terms of federal law. *See Williams v. Ford Motor Co.,* 187 F.3d 533, 538 (6th Cir.1999).

To establish an employment discrimination claim under Title VII, a plaintiff must either "present direct evidence of discrimi-nation or introduce circumstantial evidence that would allow an inference of discriminatory treatment." *Johnson v. Kroger Co.,* 319 F.3d 858, 864–65 (6th Cir.2003). The District Court concluded Giles offered no direct evidence of discrimination, and Giles does not challenge this ruling on appeal. Therefore, Giles' circumstantial claim must be evaluated using the burden-shifting approach established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and later refined by *Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Under the *McDonnell Douglas* framework, the plaintiff bears the initial burden of establishing a *prima facie* case of discrimination. *Vaughn v. Watkins Motor Lines, Inc.,* 291 F.3d 900, 906 (6th Cir.2002). The establishment of a *prima facie* case creates a rebuttable presumption of discrimination, requiring the defendant to articulate some legitimate, nondiscriminatory reason for taking the challenged action. *Id.* If the defendant is able to satisfy this burden, the plaintiff must then prove the defendant's proffered reason is, in fact, a pretext for unlawful discrimination. *Id.* The burden of proof always remains on the plaintiff. *Hartsel v. Keys,* 87 F.3d 795, 800 (6th Cir.1996). A defendant bears only the burden of production and not the burden of persuasion. *Anthony v. BTR Auto. Sealing Sys., Inc.,* 339 F.3d 506, 515 (6th Cir.2003). A defendant need not prove a nondiscriminatory reason for terminating an employee, but rather must only articulate a valid rationale. *Hartsel,* 87 F.3d at 800 (citing *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 514, 113 S.Ct. 2742, 2751, 125 L.Ed.2d 407 (1993)).

To establish a *prima facie* case of discrimination based on race. Giles must demonstrate (1) he was a member of a protected class; (2) he suffered an adverse employment action; (3) he was qualified

894

for the position; and (4) a person outside the protected class was treated more favorably than he was. *Braithwaite v. Timken Co.*, 258 F.3d 488, 493 (6th Cir. 2001). The parties agree Giles has established the first three parts of a *prima facie* case of race discrimination.

■ The parties dispute whether Giles established the fourth portion of a *prima facie* case. whether there is a genuine issue of material fact NNI treated an employee outside Giles' protected class more favorably than it treated Giles, from which a reasonable jury could infer NNI acted on the basis of race when it terminated him. In making this comparison, Giles must show a comparable, non-protected employee was similarly situated to him in all relevant aspects, yet treated more favorably by NNI. *Clayton v. Meijer, Inc.*, 281 F.3d 605, 610–11 (6th Cir.2002). Giles need not demonstrate an exact correlation in order to be similarly situated with the non-protected, more favorably treated employee, but Giles must show relevant similarity. *Id.* at 611. As we have previously explained:

> [T]o be deemed "similarly-situated", the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.

*Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir.1992). The district court held, and we agree, Giles did not present evidence to raise a genuine issue of material fact as to this portion of a *prima facie* case.

The obvious comparison for Giles to draw is between NNI's termination for his perceived conduct and the mere discipline meted out to Jim Burger, a Caucasian employee, for his improper conduct. NNI caught Burger using his computer to access and view sexually explicit material in the workplace. NNI disciplined Burger, but did not terminate him, for this conduct. By contrast, Giles was terminated after he reportedly approached a female coworker, removed his pants, and exposed his genitals to her. Giles offers no argument to suggest there is relevant similarity between his conduct and that of Jim Burger, and the District Court properly concluded Giles was not similarly situated to Burger in all relevant aspects. While accessing sexually explicit material is highly inappropriate, it is not the same as displaying one's genitals to an unsuspecting and unwilling coworker. Even if Burger directed the sexually explicit material to the same female coworker that accused Giles of exposing himself, the nature of Burger's act—involving a two-dimensional depiction confined to the paper or computer screen bearing the image—is a circumstance that distinguishes his conduct and NNI's reaction from Giles' action and resulting termination. In sharp contrast, Giles' reported conduct involved no intervening medium between his sexually explicit display and his female coworker. Exposing himself was so egregious that it generated a complaint to NNI and could have caused psychological harm to the target of his sexual misconduct. Because Giles' alleged conduct is not relevantly similar to Burger's, there is no relevant comparison to be made between Giles' termination and the discipline Burger received. Therefore, there is no basis to infer NNI treated Giles differently on the basis of his race when it terminated him for exposing his genitals to a female coworker.

Instead of comparing NNI's reactions to his conduct and similar conduct of a non-protected employee, Giles suggests the proper comparison is between himself and an unidentified non-minority testing ma-

chine operator who was also pressured to falsify test results. The disparate treatment he alleges is that NNI solicited employees to falsely accuse Giles—but not the non-minority employee—of sexual misconduct so it could justify terminating Giles. However, Giles does not offer competent proof to support this theory. Giles offers the subjective beliefs of coworkers regarding the treatment he received from NNI and conclusive or hearsay statements that NNI employees falsely accused Giles of misconduct due to NNI pressure. Because Giles has not shown a genuine issue of material fact as to the fourth portion of a *prima facie* case of race discrimination, the District Court properly granted summary judgment to NNI.

■ Even if Giles raised a *prima facie* case of race discrimination, we agree with the District Court that Giles failed to demonstrate a genuine issue of material fact that NNI's proffered reason for terminating him is a pretext for race discrimination. NNI states it discharged Giles on the basis of information, which it believed was true, he violated the company's sexual harassment policy by exposing himself to female coworkers. Because NNI was reasonably informed and considered the decision to terminate Giles in advance, this is a legitimate, nondiscriminatory reason to terminate him. *See Smith v. Chrysler Corp.*, 155 F.3d 799, 807 (6th Cir.1998).

Once an employer offers a legitimate, nondiscriminatory reason for taking an adverse employment action, a plaintiff "must produce sufficient evidence from which the jury may reasonably reject the employer's explanation." *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1083 (6th Cir.1994). To demonstrate NNI's proffered reason is a pretext for race discrimination, Giles must show by a preponderance of the evidence either (1) the proffered reason had no basis in fact, (2) the proffered reason did not actually motivate the discharge, or (3) the proffered reason was insufficient to motivate discharge. *Id.* at 1084 (citation omitted).

Giles fails to demonstrate pretext because his proof consists of conclusive allegations, hearsay, and subjective beliefs regarding racial bias within NNI management or that Giles would not have exposed himself as NNI believes he did. "[R]umors, conclusory allegations and subjective beliefs ... are wholly insufficient evidence to establish a claim of discrimination as a matter of law." *Mitchell,* 964 F.2d at 585. Giles did not meet his burden of producing evidence from which a reasonable jury could determine NNI terminated him on the basis of race. Therefore, the District Court properly granted summary judgment to NNI.

**B. Wrongful Discharge in Violation of Public Policy**

■ Giles also brought a claim for wrongful discharge arising from his termination by NNI. Under Ohio common law, a claim for wrongful discharge in violation of public policy requires proof of the following elements:

(1) That a clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law (the clarity element);

(2) That dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy (the jeopardy element);

(3) The plaintiff's dismissal was motivated by conduct related to the public policy (the causation element); and

(4) The employer lacked overriding legitimate business justification for the dismissal (the overriding justification element).

*Kulch v. Structural Fibers, Inc.*, 78 Ohio St.3d 134, 677 N.E.2d 308, 321 (1997).

The District Court properly concluded Giles' wrongful termination claim could not proceed based on a violation of anti-discrimination statutes, because his underlying race discrimination claim failed. *See Kirkland v. St. Elizabeth Hosp.*, 120 F.Supp.2d 660, 671 (N.D.Ohio 2000). In the alternative, Giles may premise his claim of wrongful discharge in violation of public policy on the theory he was terminated because he complained about NNI's pressure to falsely state medical stents passed inspection when they were actually faulty. This claim fails, however, because Giles has not identified what public policy NNI allegedly violated if it terminated him on such grounds. Further, he has not shown his termination was caused by any of his conduct related to such a policy, nor has he shown NNI lacked an overriding legitimate business justification for terminating him. Because Giles failed to establish evidence of his wrongful termination claim, summary judgment for NNI was warranted.

## IV. CONCLUSION

Because Giles failed to establish NNI treated a non-protected, similarly-situated coworker more favorably than it treated him and he failed to show NNI's legitimate, nondiscriminatory explanation for terminating him is pretextual and because Giles failed to establish any basis for a state law retaliation claim, we **AFFIRM** the District Court's grant of summary judgment in favor of NNI in all respects.